PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 11-4254

————

DANIEL R. SHERZER;
GERALDINE SHERZER,

Appellants

v.

HOMESTAR MORTGAGE SERVICES;
HSBC BANK USA;
DANA CAPITAL GROUP, INC.;
THE CIT GROUP CONSUMER FINANCE, INC.;
MERCURY MORTGAGE PARTNERS

————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 07-cv-05040)
District Judge:  Honorable Mary A. McLaughlin

————

Argued September 19, 2012
Before: SLOVITER, RENDELL and
HARDIMAN, *Circuit Judges*.

(Filed: February 5, 2013)

Matthew B. Weisberg [ARGUED]
Weisberg Law
7 South Morton Avenue
Morton, PA 19070
    *Attorneys for Plaintiffs-Appellants*

Sandra M. Di Iorio
Joe N. Nguyen
Nipun J. Patel
Henry F. Reichner [ARGUED]
Reed Smith
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103

Edmund D. Krulewicz
Kellie A. Lavery
Reed Smith
136 Main Street
Suite 250, Princeton Forrestal Village
Princeton, NJ 08540
    *Attorneys for Appellees Homestar Mortgage Services*
    *and HSBC Bank USA*

Kirk D. Jensen [ARGUED]
Michael R. Williams
BuckleySandler
1250 24th Street, N.W.
Suite 700
Washington, DC 20037
    *Attorneys for Amicus Appellee American Bankers*
    *Assn.*

Peter G. Wilson [ARGUED]
Consumer Financial Protection Bureau
1700 G Street, N.W.
Washington, DC 20006

Rachel Rodman
Consumer Financial Protection Bureau
1500 Pennsylvania Avenue, N.W.
Attn: 1801 L Street, N.W.
Washington, DC 20229
    *Attorneys for Amicus Curiae Consumer Financial
    Protection Bureau*

———————

OPINION OF THE COURT

———————


HARDIMAN, *Circuit Judge*.

This appeal arises under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq*. Congress enacted TILA in 1968 to promote the "informed use of credit." *Id*. § 1601(a). To achieve this goal, TILA sought "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *Id*. A consumer who does not receive the requisite disclosures regarding a loan secured by his principal dwelling may rescind the loan agreement. *See id*. § 1635.

Consumers have an absolute right to rescind for three business days after closing on the loan. *Id*. § 1635(a). To exercise this "no questions asked" right of rescission, the

obligor on the mortgage note must simply notify the creditor of his intention to do so, consistent with the applicable regulations. *Id*. § 1635(a), (b). No court filing is necessary to effectuate this right.

If the lender fails to make the requisite disclosures before the loan commences, the three-day restriction on the right of rescission does not begin to run. A consumer who does not receive the requisite disclosures has a right to rescind that lasts until three days after the disclosures are received. *Id*. § 1635(a). That right of rescission is not perpetual, however, even if the consumer never receives all of the requisite disclosures. The right "expire[s] three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." *Id*. § 1635(f). This appeal requires us to decide what action an obligor must take to exercise the right of rescission before that three-year period expires.

I

Appellants Daniel and Geraldine Sherzer obtained two loans secured by mortgages on their principal dwelling from Homestar Mortgage Services: one for $705,000 and one for $171,000. The loans closed on August 26, 2004, and Homestar later assigned both loans to HSBC Bank. On May 11, 2007—less than three years after the closing date—the Sherzers' counsel wrote a letter to Homestar and HSBC (collectively, Lenders), which asserted that Homestar had failed to provide all of the disclosures required by TILA. The letter also claimed that these failures were material violations, and informed the Lenders that the Sherzers were exercising their right to rescind the loan agreements under 15 U.S.C. § 1635.

4

HSBC agreed to rescind the smaller of the two loans. As for the much larger loan, however, HSBC denied that rescission was appropriate, claiming that Homestar had not materially violated TILA. The Sherzers filed suit in the United States District Court for the Eastern District of Pennsylvania against the Lenders on November 30, 2007—more than three years after their closing date—seeking a declaration of rescission, remedies for rescission, and damages.

The Lenders filed a motion for judgment on the pleadings, arguing that suits for rescission filed more than three years after a loan's closing date are time-barred under 15 U.S.C. § 1635(f), even when the obligor mailed a notice of rescission within the three-year period. The Sherzers responded that they exercised their right of rescission and rescinded the loan agreement by mailing a written notice; they were not also required to file suit within the three-year period. The District Court agreed with the Lenders, granted the motion for judgment on the pleadings, and dismissed the case. The Sherzers appealed.

II

The District Court had jurisdiction over the Sherzers' claims pursuant to 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a judgment on the pleadings. *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012). Judgment on the pleadings is appropriate if the Lenders, as the movants, establish that there is no issue of material fact and that they are entitled to judgment as a matter of law. *See id.* In considering the motion for judgment on the pleadings, the District Court was required to accept all of the Sherzers' allegations as true and draw all reasonable inferences in their favor. *See id.*

5

## III

The question presented by this appeal is simple: does an obligor exercise his right to rescind a loan subject to TILA by so notifying the creditor in writing, or must the obligor file suit before the three-year period expires? The answer to the question is more complicated.

The Sherzers and their *amicus*, the Consumer Financial Protection Bureau (CFPB), argue that § 1635 "establishes a private, non-judicial mechanism for consumers to rescind mortgage loans by providing notice to their lenders." Br. of CFBP at 11. Under this view, an obligor who has not received material disclosures can exercise his right to rescission and rescind his loan agreement simply by sending written notice to the lender within the three-year period. After notice has been sent, the lender and the borrower incur certain obligations under § 1635(b). Specifically, the lender must return any money or property that it received as downpayment, and must take any actions necessary to show that it no longer has a security interest in the property. *See* 15 U.S.C. § 1635(b). If the lender does not comply with § 1635(b)—because, for example, it contends that all relevant disclosures have been made such that the obligor had no right to rescind the agreement—the obligor may file an action to recover the money and property owed and to quiet title. Under this view, rescission of the loan agreement occurs when a valid notice of rescission is sent, not when a court enters an order enforcing the obligor's rights. The subsequent legal action would simply determine whether a valid rescission had occurred, and, if so, the court would enforce the respective obligations of the parties. This interpretation of § 1635 accords with the Eleventh Circuit's description of the rescission process in *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1139–40 (11th Cir. 1992) (explaining that rescission occurs automatically upon notice),

and would lead to the same result reached by the Fourth Circuit in *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 277–78 (4th Cir. 2012) (holding that a consumer need only send notice of rescission within three years of the closing date).[1]

The Lenders and their *amici*—the American Bankers Association, Consumer Bankers Association, and Consumer Mortgage Coalition—argue that a consumer's unilateral notice of rescission does not automatically rescind a loan agreement. *See Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1188 (10th Cir. 2012); *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1172 (9th Cir. 2003); *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54–55 (1st Cir. 2002). The Lenders argue that when there is a dispute regarding the propriety of rescission, the obligor must file suit within three years of the closing date to exercise his right of rescission or

---

[1] In *Gilbert*, the Fourth Circuit held that an obligor can exercise his right to rescission simply by sending written notice of his intent to rescind within the three-year period. If the borrower has sent timely written notice, then he can file suit to enforce his right to rescission after the three-year period has passed. The loan agreement is not technically rescinded until a court enters an order granting a rescission. *Gilbert*, 678 F.3d at 277 (distinguishing between "the issue of whether a borrower has exercised her right to rescind" and "the issue of whether rescission has, in fact, been completed and the contract voided," and explaining that "[t]o complete the rescission and void the contract . . . . [e]ither the creditor must acknowledge that the right of rescission is available and the parties must unwind the transactions amongst themselves, or the borrower must file a lawsuit so that the court may enforce the right to rescind." (internal quotation marks omitted)).

he will be forever time-barred.  This view has been adopted by the Ninth and Tenth Circuits.  *See Rosenfield*, 681 F.3d at 1188; *McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325, 1326 (9th Cir. 2012).    Under this view, rescission occurs when the parties agree or when a court enters an order of rescission.  According to the Lenders, the Supreme Court "implicitly recognized" that an obligor must both send written notice *and* file suit within three years of the closing date in *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 411–13 (1998).

In our opinion, the text of § 1635 and its implementing regulation (Regulation Z) supports the view that to timely rescind a loan agreement, an obligor need only send a valid notice of rescission.  *Beach* is consistent with this view, as it does not address *how* an obligor must exercise his right of rescission within the three-year period.    Although the Lenders' *amici* have raised practical concerns that may arise if obligors are permitted to rescind their loans through written notice alone, we find ourselves constrained by the text of § 1635 in spite of those concerns.

## A

In determining what the Sherzers had to do to rescind their loan agreement pursuant to § 1635, we begin with the statutory text.  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).  When "the statute's language is plain, the sole function of the courts is to enforce it according to its terms."  *Id.* (internal quotation marks omitted).  Here, the language of the statute provides that an obligor exercises his right of rescission when he sends notice to the creditor; it says nothing about a court filing.

Sections 1635(a) and (b) explicitly address both how the right of rescission is exercised and when the rights and corresponding obligations flowing therefrom are incurred by

8

the parties to the loan. Section 1635(a) provides that "the obligor shall have the right to rescind the transaction . . . *by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so*." 15 U.S.C. § 1635(a) (emphasis added). Regulation Z, in turn, specifies that the obligor must notify his lender "by mail, telegram, or other means of written communication." 12 C.F.R. §§ 1026.15(a)(2), 1026.23(a)(2). Neither § 1635(a) nor Regulation Z states that the obligor must also file suit; both refer exclusively to written notification as the means by which an obligor exercises his right of rescission.

Section 1635(b), which describes the "[r]eturn of money or property following rescission," suggests that rescission occurs automatically when the obligor validly exercises his right to rescind. It states, in relevant part:

> *When an obligor exercises his right to rescind under subsection (a)* of this section, he *is not liable* for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, *becomes void* upon such a rescission. Within 20 days after *receipt of a notice of rescission*, the creditor *shall return* to the obligor any money or property given as earnest money, downpayment, or otherwise, and *shall take* any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. § 1635(b) (emphasis added). When an obligor exercises his right to rescind as defined in § 1635(a)—that is, as Regulation Z states, when he notifies the creditor by mail, telegram, or other means of written communication that he is rescinding—he is free of any liability for payments, the

9

security interest "becomes void," and the creditor incurs an obligation to return money or property given. As with § 1635(a), there is no mention of filing a suit at law or equity. Rather, § 1635(b) states that the creditor must return money or property "[w]ithin 20 days after *receipt of a notice of rescission*"—not within twenty days of a court order stating that the obligor is entitled to rescind. *See id.*[2]

Additional support for the proposition that rescission occurs upon transmittal of valid written notice is also found in § 1635(f). That section, which establishes the three-year limitation, makes no mention of filing a suit or bringing a claim:

> An obligor's *right of rescission* shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . .

*Id.* § 1635(f) (emphasis added); *see also Beach*, 523 U.S. at 417 ("[Section 1635(f)] says nothing in terms of bringing an

---

[2] Regulation Z uses similar language, except that it refers to "[w]hen a consumer rescinds a transaction," as opposed to "when an obligor exercises his right to rescind." 12 C.F.R. §§ 1026.15(d), 1026.23(d) (stating that the "security interest . . . becomes void" and that the "creditor shall return" money or property given). The reference to a consumer rescinding the transaction—as opposed to a court granting rescission—further supports the view that rescission occurs upon transmission of valid written notice.

action but instead provides that the 'right of rescission [under the Act] shall expire' at the end of the time period."); *McOmie-Gray*, 667 F.3d at 1327 ("Section 1635 does not explicitly establish a time limit in which borrowers must bring suit for rescission if a lender does not comply with the rescission request. Indeed, it 'says nothing in terms of bringing an action' or 'a suit's commencement.'" (quoting *Beach*, 523 U.S. at 417)). In contrast, statutes that circumscribe the time for bringing suit—statutes of limitation and statutes of repose alike—typically refer either to causes of action or the commencement of a civil action.[3] Thus, the

---

[3] *See Beach*, 523 U.S. at 416 ("[M]ost statutes of limitation provide either that 'all actions . . . shall be brought within' or 'no action . . . shall be brought more than' so many years after 'the cause thereof accrued.'" (quoting Note, *Developments in the Law—Statutes of Limitations*, 63 Harv. L. Rev. 1177, 1179 (1950))); *Lieberman v. Cambridge Partners, L.L.C.*, 432 F.3d 482, 490 (3d Cir. 2005) ("Unlike a statute of limitations, a statute of repose is not a limitation of a plaintiff's remedy, but rather defines the right involved in terms of the time allowed to bring suit." (quoting *P. Stolz Family P'ship v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004))); *see also, e.g.*, 15 U.S.C. § 78i(f) ("No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation.") (recognized as a statute of repose in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 360 n.6, 363 (1991)); 42 Pa. Cons. Stat. Ann. § 5536(a) ("[A] civil action or proceeding . . . must be commenced within 12 years after completion of construction of such improvement to recover damages . . . .") (recognized as a statute of repose in *Luzadder v. Despatch Oven Co.*, 834 F.2d 355, 358 (3d Cir. 1987)).

absence of any reference to causes of action or the commencement of suits in § 1635 also suggests that rescission may be accomplished without a formal court filing.

B

Only two provisions in § 1635 make any mention of courts, and both are silent as to whether court involvement is necessary to effect rescission. First, § 1635(b) notes that "[t]he procedures prescribed by this subsection shall apply except when otherwise ordered by a court." Under this provision a court may intervene in the process that ensues after the obligor has sent written notification. That is, if either the obligor or the creditor sues after the obligor sends notice of rescission, the court has the discretion to modify the order in which the obligor and creditor are required to exchange property or disclaim security interests. *See Williams*, 968 F.2d at 1141–42. This provision in no way suggests that court involvement is a *sine qua non* for rescission.

Second, § 1635(g), which was added as part of the 1980 amendments to TILA, states that "in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind." This provision was added simply to clarify that an obligor who rescinds pursuant to § 1635 is not precluded from also seeking damages under 15 U.S.C. § 1640. *See Brown v. Nationscredit Fin. Servs. Corp.*, 349 F. Supp. 2d 1134, 1137 (N.D. Ill. 2005) ("Prior to the [1980] amendment, some courts did not allow plaintiffs to concurrently sue for rescission under § 1635 and damages under § 1640, but instead required borrowers to elect one of the two remedies."); S. Rep. No. 96-368, at 29 (1979) ("[T]he bill explicitly provides that a consumer who exercises his right to rescind may also bring suit under the Act for other

violations not relating to rescission. The Act is currently ambiguous on this issue, and this section codifies the majority position of the courts."); *see also Vallies v. Sky Bank*, 591 F.3d 152, 163 n.17 (3d Cir. 2009) ("Section 1635 provides the rescission remedy independently, explicitly, and in addition to civil damages under § 1640." (citing 15 U.S.C. § 1635(g))); *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 576 (7th Cir. 2008) ("Section 1635(g) is a simple remedial cross-reference; it provides that rescission plaintiffs may also seek damages under § 1640. It does no more."). Thus, § 1635(g) sheds no light on what an obligor must do to exercise his right of rescission.

In sum, nothing in the text of the statute supports the view that "it is the filing of an action in a court . . . that is required to invoke the right limited by the TILA statute of repose," *Rosenfield*, 681 F.3d at 1183 (rejecting the notice-only view). *See Gilbert*, 678 F.3d at 277 ("Simply stated, neither 15 U.S.C. § 1635(f) nor Regulation Z says anything about the filing of a lawsuit, and we refuse to graft such a requirement upon them."). *But see Large*, 292 F.3d at 54–55 (suggesting that the "natural reading of [the] language [in § 1635(b)] is that the security interest becomes void . . . either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined," but failing to explain what statutory language "natural[ly]" supports that reading).[4]  Adopting the

---

[4] The Lenders' *amici* argue that rescission, as it is generally understood, "is a court-ordered 'unwinding' of a contract," which necessarily "involves a judicial termination of a party's contractual obligations." Br. of ABA at 7 (quoting *Jones v. InfoCure Corp.*, 310 F.3d 529, 535 (7th Cir. 2002) (discussing whether parties were entitled to the equitable remedy of rescission)). This is only partly true.

13

interpretation of the statute advocated by the Lenders would require us to infer that the statute contains additional, unwritten requirements with which obligors must comply—an inference that seems particularly inappropriate in light of the fact that TILA is a remedial statute that we must construe liberally. *See Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 502 (3d Cir. 1998). We thus join the Fourth Circuit in holding that an obligor exercises his right of rescission by

---

Historically, two types of rescission have been available to parties in other contexts: rescission in equity and rescission at law. *See Omlid v. Sweeny*, 484 N.W.2d 486, 490 & n.3 (N.D. 1992) (distinguishing between rescission at law and rescission in equity); Dan B. Dobbs, *Law of Remedies* § 4.8 (2d ed. 1993) (same). The first, rescission in equity, does involve a court-ordered unwinding of a contract. *See Omlid*, 484 N.W.2d at 490 n.3 (explaining that "the contract continues to exist until set aside by the equity decree" (quoting Hugh S. Koford, Comment, *Rescission at Law and in Equity*, 36 Calif. L. Rev. 606, 606 (1948))). But the second, rescission at law, operates akin to the way the Sherzers suggest that § 1635 operates: it occurs automatically when parties have taken the requisite action, and any subsequent suit is brought to enforce the rights flowing from rescission. *Williams*, 968 F.2d at 1140 (describing § 1635(b) as a "reordering of common law rules governing rescission"); *see also Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1322 (9th Cir. 1998) ("When a party gives notice of rescission, it has effected the rescission, and any subsequent judicial proceedings are for the purpose of confirming and enforcing that rescission."); *Omlid*, 484 N.W.2d at 490 n.3; *Jones v. Bohn*, 311 N.W.2d 211, 213 (S.D. 1981). Thus, little can be inferred from the way that rescission operates in other contexts, as the interpretations proffered by both parties have historical analogues.

14

sending the creditor valid written notice of rescission, and need not also file suit within the three-year period.[5] *See Gilbert*, 678 F.3d at 278; *see also Williams*, 968 F.2d at 1139–40 (discussing whether a court may modify procedures for rescission, and explaining in the course of that discussion that rescission occurs automatically upon notice).

## IV

As we indicated at the outset, the answer to the question presented by this appeal is not pellucid, although we do think it is controlled by the statutory language. While the

---

[5] We disagree, to some extent, with the Fourth Circuit's characterization of the rescission process. As noted above, the court in *Gilbert* distinguished between "the issue of whether a borrower has exercised her right to rescind" and "the issue of whether rescission has, in fact, been completed and the contract voided." 678 F.3d at 277. It determined that borrowers need only send written notice within three years to exercise the right of rescission. Borrowers who had timely exercised their right of rescission could file suit after the three-year period had passed. *Id*. at 277–78. It also explained, however, that rescission does not occur automatically; the actual rescission of the loan agreement occurs when the parties agree to rescission or when the court enters an order granting rescission. *Id*. at 277. We find that the statutory language of §§ 1635(a) and (b) suggests that rescission occurs at the time the obligor exercises his right to rescission, and hold today that the contract is voided at the time valid notice is sent, pursuant to 15 U.S.C. § 1635(b). We agree, however, with the Fourth Circuit's determination that the § 1635(f) bar does not preclude consumers from filing suit after the three-year period has passed, as long as they send written notice of rescission within that three-year period.

Lenders and their *amici* raise several concerns worthy of our careful attention, we find them unpersuasive for the reasons that follow.

A

First, the Lenders and their *amici* argue that our interpretation of § 1635 is foreclosed by the Supreme Court's decision in *Beach*. This view has been adopted by two of our sister courts. *See Rosenfield*, 681 F.3d at 1182 ("[W]e believe that *Beach* is dispositive of the instant question."); *McOmie-Gray*, 667 F.3d at 1328 ("Were we writing on a blank slate, we might consider whether notification within three years of the transaction could extend the time limit imposed by § 1635(f). But under the case law of this court and the Supreme Court, rescission suits must be brought within three years from the consummation of the loan, regardless whether notice of rescission is delivered within that three-year period."). According to this view, *Beach* implicitly recognized that it is insufficient for consumers to mail notice to their lenders within the three-year period required by § 1635(f); they must file suit within the three-year period as well. *E.g. Rosenfield*, 681 F.3d at 1182 (adopting the view that "the Supreme Court has definitively foreclosed—through the implicit instruction of *Beach*—any argument that a consumer may exercise her right to rescind [by notifying the creditor of her intent to rescind in writing within the prescribed time limit].").

Unlike these courts, we do not read *Beach* to answer the question presented in this appeal. *Beach* addressed whether obligors who failed to provide notice of rescission within the three-year period may nevertheless assert rescission as an affirmative defense in foreclosure proceedings. *Beach*, 523 U.S. at 411–13. The borrowers in *Beach* refinanced their house in 1986, and took no action between 1986 and 1989 that could be construed as exercising their right to rescind. They simply stopped making mortgage

16

payments five years after the closing, and the bank began foreclosure proceedings. *Id.* at 413. During the foreclosure proceedings, the borrowers asserted as an affirmative defense that the bank had failed to provide certain material disclosures. *Id.* at 413–14. They argued that because § 1635(f) is a statute of limitations, it bars only the commencement of a suit, not the defensive use of rescission. *Id*. at 415.

In addressing the borrowers' claims, the Supreme Court considered "whether § 1635(f) is a statute of limitation, that is, whether it operates, with the lapse of time, to extinguish the right which is the foundation for the claim or merely to bar the remedy for its enforcement." *Id.* at 416 (internal quotation marks and alteration omitted). It held that § 1635(f) does not merely limit the time for filing a suit; instead, it provides that the right of rescission itself lasts for three years. *Id.* at 417 (explaining that § 1635(f) is phrased in terms of the duration of the right). As a result, obligors who have not exercised their right of rescission within the three-year period cannot later assert rescission as an affirmative defense. *See id*. at 417–19. Thus, under *Beach*, an obligor must exercise his right of rescission within three years of the commencement of the loan; the right is extinguished once that period has passed. *Id*. at 419.

Critical to this appeal, nowhere in *Beach* does the Court address *how* an obligor must exercise his right of rescission within that three-year period. This omission is unsurprising since the obligors in *Beach* did not claim to have taken *any* action to rescind their loan before the bank initiated foreclosure proceedings. *See Gilbert*, 678 F.3d at 278 ("The *Beach* Court did not address the proper method of exercising a right to rescind or the timely exercise of that right."); *Calvin v. Am. Fid. Mortg. Servs., Inc.*, 2011 WL 1672064, at *2 (N.D. Ill. May 3, 2011) ("*Beach* determined only that the

right to rescission expired after three years for purposes of its assertion as a defense as well as for bringing suit. *Beach* did not discuss how the right must be asserted within the three-year period." (internal citation omitted)). Nevertheless, the Lenders argue that certain language in the opinion implies that, when rescission is disputed, obligors must file suit within three years of the closing.

Some of the language upon which the Lenders rely has no obvious relevance to whether rescission is effected by sending notice or through filing suit. For example, the Lenders highlight the following statement: "[T]he Act permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run." *Beach*, 523 U.S. at 419; *see also Rosenfield*, 681 F.3d at 1187 (emphasizing this statement); *McOmie-Gray*, 667 F.3d at 1328 (same). This passage is consistent with the view that obligors must file suit within three years, but it is also consistent with our view that they need only send notice of rescission to their lenders during that period, if that is how the right of rescission is exercised. The most that can be gleaned from the oft-quoted statement is that, however the right of rescission is to be exercised, it must be done within three years.

Other language identified by the Lenders provides only weak support for the view that obligors must file suit within three years. They emphasize the following statement:

> Section 1635(f) . . . takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the 'right of rescission [under the Act] shall expire' at the end of the time period. It talks not of a suit's

18

> commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous.

*Beach*, 523 U.S. at 417 (alterations in original); *see also Rosenfield*, 681 F.3d at 1181 (emphasizing this statement); *McOmie-Gray*, 667 F.3d at 1328 (same). The Lenders are correct that some of this passage could be read as inconsistent with the notice-only view; if obligors could exercise their right of rescission simply by sending written notice within three years, and then file a suit to enforce the rights flowing from rescission after the three-year period has passed, then a "limitation on the time for seeking a remedy" would not be "superfluous." But portions of the passage could be used as support for our notice-only view, as well. The Court explicitly observed that § 1635(f) "says nothing in terms of bringing an action," *Beach*, 523 U.S. at 417, and this silence supports the Sherzers' view that § 1635 operates as a private enforcement mechanism. In any event, because the Court was not considering the method by which an obligor must exercise his right of rescission, the passage provides only tenuous support for either view. In resolving the question at issue here, we rely on the statutory language, not on the debatable implications of dicta.

### B

The Lenders and their *amici* also suggest that it would be problematic for a court to recognize that rescission has occurred after the three-year period has passed because the obligor would no longer have a "right of rescission" to enforce at the time of the suit. *E.g.* Br. of ABA at 7 ("Perhaps more fundamentally, courts have never assumed the role of enforcing a right that has already been extinguished."). But while the obligor no longer has the right

of rescission after the three-year period has passed, he does have the right to the return of his property and to clear title—the rights flowing from rescission—and it is these rights that permit him to bring suit.

We also note that, if an obligor could never seek court enforcement after his right of rescission has expired, as the Lenders suggest, it is difficult to imagine how the obligor's three-day, absolute right of rescission could operate effectively. If an obligor who has received all material disclosures does not exercise his three-day right to rescission, it expires; he has no right, on the fourth day, to demand rescission.[6] But if the obligor does exercise this right, then the lender has twenty days to respond by returning any money or property that it has received from the obligor, and to "take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). If, after twenty days have passed, the lender fails to respond to the obligor's notice, the obligor may file suit against the lender—even though the three-day period in which he has the absolute right of rescission has long since passed. The obligor is not required to file suit against the creditor during the three-day period; indeed, because the lender has twenty days to respond to the consumer's notice,

---

[6] Nor could the consumer raise the fact that he had a three-day right of rescission as an affirmative defense in later foreclosure proceedings, or claim that equitable tolling should extend the three-day period. Thus, like § 1635(f), this provision operates in at least some respects like a statute of repose. *See, e.g.*, *Rosenfield*, 681 F.3d at 1181 (finding that, because the *Beach* Court held that the consumers could not assert the right to rescind as an affirmative defense in foreclosure proceedings under § 1635(f), § 1635(f) is a statute of repose).

the consumer would seemingly have no basis for filing a suit during that time. But he can file suit to compel the lender to comply with § 1635(b) if the lender does not, for example, return within twenty days any loan fees that were paid. After the three-day period has expired, the obligor no longer has a "right of rescission"—but because he exercised that right in a timely manner, he now has a statutory right to his property and to clear title. The three-year right of rescission should be understood to work in the same way: it expires if it is not exercised in three years, but borrowers who have exercised the right can file suit after the three-year period has passed.

## C

The Lenders' *amici* express several practical concerns that may arise if rescission can be effected simply by sending valid written notice. First and foremost is the problem of the obligor transmitting notice of rescission when he has no cause to do so. They argue that allowing obligors to unilaterally rescind by sending notice empowers them to void a lender's security interest, even when the obligor has, in fact, received all required disclosures. Second, they argue that this interpretation may create increased uncertainty with respect to title, and could increase costs for both lenders and consumers. We find the first concern unwarranted, and the second concern, while likely valid, does not permit us to disregard the text of § 1635.

According to the Lenders' *amici*, under the notice-only interpretation, the lender's security interest would become instantly void by law even when the obligor sends an invalid notice. This concern has also been expressed by the Ninth Circuit. *See Yamamoto*, 329 F.3d at 1172 ("[I]t cannot be that the security interest vanishes immediately upon the giving of notice. Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or

21

not the lender had actually committed any."). The notice-only holding we adopt today will not lead to such a result. Rescission of the loan agreement occurs when an obligor with a *valid* TILA claim provides the lender with written notice. That notice may be ineffective because the obligor has, in fact, received all material disclosures. It may also be ineffective because it is fraudulent—if, for example, the obligor does not have the intent or the ability to return the loan proceeds that he has received from the lender.[7] If the borrower fails to exercise a *valid* right to rescission, the lender maintains its security interest in the property and does not incur any obligations toward the borrower. A lender who believes an obligor's notice of rescission is invalid may choose to file suit to resolve any uncertainty.

Even when the obligor does validly rescind the loan, certain protections ensure that the lender does not become an unsecured creditor in the event the obligor cannot repay the loan proceeds. Section 1635(b) provides that the lender's security interest "becomes void" at the time of rescission—before the obligor incurs any repayment obligations. But if the obligor rescinds his loan and then later determines that he does not have the ability to return the loan proceeds, courts are not required to treat the lender as an unsecured creditor. One of the goals of § 1635 is "to return the parties most nearly to the position they held prior to entering into the transaction." *Williams*, 968 F.2d at 1140. To achieve this goal, courts are permitted to rearrange the parties' obligations

---

[7] By sending a notice of rescission, the obligor becomes obliged to tender any property he has received from the lender "[u]pon the performance of the creditor's obligations." 15 U.S.C. § 1635(b). Thus, a notice of rescission is not effective if the obligor lacks either the intention or the ability to perform, *i.e.*, repay the loan.

to one another under § 1635(b). A court may find that rescission has occurred, but choose to condition the release of a security interest on the return of the loan proceeds to protect the lender.

Second, the Lenders' *amici* contend that allowing obligors to rescind by written notice alone may cloud title held by banks on foreclosure, a concern noted by the Supreme Court in *Beach*. 523 U.S. at 418–19. If obligors were required to bring suit to exercise the right of rescission, both the lender and the obligor could know with more certainty the status of the loan agreement (whether is has been rescinded, or may be in the future) and the secured property (whether the lender has a security interest in it). Three years after the closing date of the loan, if the obligor had not filed suit demanding rescission, he would never be able to claim that rescission should have occurred. Ten years after the closing date, if the lender initiates foreclosure proceedings, it could be confident that the obligor would not be able to claim as a defense that the agreement had actually been rescinded.

The same is not true if obligors are only required to send written notice to rescind. An obligor who has sent a written notice of rescission to his lender but received no response will not be able to wait indefinitely before filing a lawsuit to enforce the rescission, recover his property, and obtain the release of the security interest because statutes of limitation will constrain his ability to file suit. *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 414 (2005) (explaining that, if a federal statute does not expressly supply a limitations period, courts "generally 'borrow' the most closely analogous state limitations period"); *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 146–50 (1987) (borrowing statute

of limitations from an analogous federal statute).[8]  Thus, if the obligor mails a notice of rescission but takes no action for ten years, the lender can at least be assured that the obligor will not be able to file a timely court action.  If, however, ten years after the letter was sent the lender initiates foreclosure proceedings, the obligor may be able to raise the fact of rescission as a defense.  *See Beach*, 523 U.S. at 415 (explaining that "as a general matter a defendant's right to plead 'recoupment,' a 'defense arising out of some feature of the transaction upon which the plaintiff's action is grounded,' survives the expiration of the period provided by a statute of limitation that would otherwise bar the recoupment claim as an independent cause of action." (internal citations omitted)).  Permitting obligors to assert defenses related to rescission years after the three-year period has passed would be costly,[9]

---

[8] The CFPB suggests that, in determining whether an obligor seeking to enforce his rights has filed suit in a timely manner, courts may borrow from the one-year statute of limitations in § 1640 or from analogous state statutes of limitations.  Br. of CFPB at 26 n.6; *see, e.g.*, *In re Hunter*, 400 B.R. 651, 661–62 (Bankr. N.D. Ill. 2009) (borrowing from § 1640); *Graham Cnty. Soil & Water Conservation Dist.*, 545 U.S. at 422 (borrowing from state limitations period).  Because the Sherzers filed suit six months after sending the notice of rescission, we do not reach the question of what statute of limitations would apply in this context.

[9] As Lenders' *amici* correctly note, rescission is effectively an "interest-free loan," so "the longer one allows the right of rescission to be exercised, the greater the benefit to the consumer, and the greater the penalty to the creditor."  Br. of ABA at 13 (quoting Daniel Rothstein, *Truth in Lending: The Right to Rescind and the Statute of Limitations*, 14 Pace L. Rev. 633, 657 (1994)).

and the Lenders and their *amici* contend that this would effectively create the same problem that the Supreme Court sought to avoid in *Beach*. *See id.* at 418–19 (recognizing that "a statutory right of rescission could cloud a bank's title on foreclosure," and so "Congress may well have chosen to circumscribe that risk" by refusing to allow parties to exercise their right of rescission defensively after the three-year period has passed).

The practical problem faced by the Court in *Beach* was much broader than the problems the Lenders and their *amici* argue a written notice regime will create. In *Beach*, the question was whether obligors who have not taken any action to rescind their loan may nevertheless assert rescission as a defense in foreclosure proceedings. If obligors had been permitted to take that kind of action, it would have created tremendous uncertainty for the banks with respect to their interest in the secured property. During foreclosure proceedings, *any* obligor might claim that he did not receive the requisite disclosures, and the bank might lose its interest in the secured property. Here, in contrast, the uncertainty is substantially more cabined because it would exist only as to those loans for which obligors have sent the bank written notice of rescission within the three-year period. Additionally, lenders in these circumstances have options to resolve that uncertainty. Once alerted to the cloud on its title, a lender could sue to confirm that the obligor's rescission was invalid or do nothing and assume the risk that a court might later rule that the rescission was valid.

This is not to deny, however, that permitting obligors to rescind by written notice could potentially impose additional costs on banks, as it costs little for an obligor to send a letter to the lender while, on the other hand, the lender would incur some cost to sue to determine title. This may, in

25

turn, be more costly for borrowers insofar as lenders—like all businesses—pass along costs occasioned by regulation or taxation to their customers. *See* Michael Aikins, *Off-Contract Harms: The Real Effect of Liberal Rescission Rights on Contract Price*, 121 Yale L.J. Online 69, 79 (2011). But the fact that this approach may be more costly is not, in and of itself, a reason to disregard the text of the statute. Many TILA regulations increase costs for lenders (and, in turn, consumers), and it is for Congress—not the courts—to determine whether those increases are warranted. *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 52 (2008) (noting that it is inappropriate for courts to substitute their view of policy for the legislation that has been passed by Congress).

* * * *

An obligor's right to rescind a loan pursuant to TILA "expire[s] three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f). According to the most natural reading of the statutory language, an obligor must send valid written notice of rescission before the three years expire. Because the statute says nothing about filing a suit within that three-year period, we hold that the District Court erred as a matter of law when it dismissed the Sherzers' complaint as untimely. Accordingly, we will reverse the judgment of the District Court and remand for further proceedings consistent with this opinion.