*731 MURPHY, Circuit Judge,
concurring in part and dissenting in part.
While I agree with the majority that the Truth in Lending Act (TILA) does not permit suits for damages against assignees unless the alleged statutory defects are apparent on the face of the lending documents, I otherwise dissent. The majority decision is contrary to the plain language of TILA, the congressional intent behind it, and the position of the agency responsible for enforcing it. TILA is “remedial legislation to be construed broadly in favor of consumers,” Rand Corp. v. Yer Song Mono, 559 F.3d 842, 845 (8th Cir.2009), yet the majority construes its provisions broadly in favor of lenders. Nowhere in the TILA statute is there any requirement that a consumer must file a lawsuit in order to exercise a right of rescission.
I.
A.
TILA provides consumers an unconditional right to rescind a consumer credit transaction for three days after the parties have consummated the loan. 15 U.S.C. § 1635(a). The time to rescind is extended if the lender has not provided certain required disclosures. In that situation, a consumer’s “right of rescission shall expire three years” from the date of closing. Id. § 1635(f). Regardless of the grounds for rescission, TILA provides that “the obligor has the right to rescind the transaction ... by notifying the creditor, in accordance with the regulations of the [Consumer Financial Protection] Bureau, of his intention to do so.” Id. at § 1635(a). Regulation Z, promulgated by the agency charged by Congress with enforcing TILA, has provided that a consumer can “exercise the right to rescind” by “notifying] the creditor of the rescission by mail, telegram, or other means of written communication.” 12 C.F.R. § 226.23(a)(2). Such notification is the only requirement the statute and Regulation Z impose upon consumers to exercise their right of rescission.
There is no dispute that the Keirans and the Sobieniaks followed these statutory procedures. Both couples gave written notice to the lending banks that they were exercising their right to rescind, and each sent that notice less than three years after their home purchase was completed. Both couples clearly “exercised” their right in the manner prescribed by TILA and Regulation Z. When a statutory text is clear the “sole function of the courts is to enforce the plain language of the statute.” Coop v. Frederickson, 545 F.3d 652, 656 (8th Cir.2008)
The majority suggests that Beach v. Ocwen Federal Bank, 523 U.S. 410, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998), compels a different interpretation of the statute. This is a puzzling assertion since in Beach the homeowners had unquestionably not exercised their right of rescission within three years, either by providing the statutory notice or by filing a lawsuit as the majority advocates. The Beach homeowners had in fact done nothing at all until five years after they closed on their construction loan. Id. at 413, 118 S.Ct. 1408. At that point the bank began foreclosure proceedings, and the Beaches attempted to use the right of rescission as an affirmative defense. Id. at 414, 118 S.Ct. 1408. Their claim was that while § 1635(f) placed a three year time limit on filing a lawsuit, that did not prevent them from using the right of rescission defensively against a foreclosure proceeding. The Supreme Court disagreed. According to the Court, the three year time limit in § 1635(f) is not just a statute of limitation, but also a statute of repose that governs the life of the underlying right. Id. at 417-19, 118 S.Ct. 1408. Thus, if a consumer had not exer *732 cised his right of rescission within three years, he would not just be precluded from bringing a suit, he would be precluded from exercising his rescission right “defensively or otherwise.” Id. at 419, 118 S.Ct. 1408.
While Beach made clear that the right of rescission expires if it is not exercised within a three year period, it “does not address how an obligor must exercise his right of rescission within the three year period.” Sherzer v. Homestar Mortg. Servs., 707 F.3d 255, 258 (3d Cir.2013) (emphasis in original). In fact the homeowners in Beach did not attempt to exercise their right of rescission in any form— notice, lawsuit, or otherwise — until five years after the completion of their transaction. Thus, Beach provides no answer to the question in this case. “The most that can be gleaned” from Beach “is that, however the right of rescission is to be exercised, it must be done within three years.” Id. at 263.
It also cannot be inferred from the fact that § 1635 is a statute of repose that homeowners must sue to exercise their right of rescission. A statute of repose extinguishes a statutory right unless some action is taken to exercise that right within a particular time period. By contrast, a statute of limitation is a procedural bar to recovery that does not affect the validity of the underlying right (which could still be revived, for example, by legislative action or used as an affirmative defense). See id. at 262; Harding v. K.C. Wall Prods., Inc., 250 Kan. 655, 831 P.2d 958, 967-68 (1992). The distinction between a statute of limitations and a statute of repose is not germane to the controversy in the cases before the court.
While in many circumstances a statute of repose sets a limit on the time to file a lawsuit, it does not always do so. Whether a lawsuit is required depends on how a party may exercise its underlying right. For example, in Ma v. Merrill Lynch, 597 F.3d 84 (2d Cir.2010), there was a statute of repose under which a bank customer would have the right to be reimbursed for an unauthorized payment only if the customer objected within a year of receiving notice of the debit. Id. at 88 (citing N.Y. U.C.C. § 4-A-505). Likewise, a statute of repose in Balam-Chuc v. Mukasey set a deadline for filing a visa petition. 547 F.3d 1044, 1049 (9th Cir.2008) (citing Immigration and Nationality Act § 245(i)). Once a statute of repose has been triggered, a party faces a deadline within which it must act, but there is no requirement that the action be a lawsuit. The nature of the required action depends on what the statute provides. TILA unambiguously provides that the right of rescission is exercised “by notifying the creditor, in accordance with the regulations of the [Consumer Financial Protection] Bureau, of his intention to do so.” 15 U.S.C. § 1635(a).
Congress may choose to use a statute of repose to make the filing of a lawsuit necessary in order to exercise a statutory right, but when it has chosen to do so, it has done it explicitly. Section 413 of ERISA provides an example of a statute of repose in connection with breaches of fiduciary duties: “No action may be commenced” more than six years after the alleged breach of fiduciary duty occurred. 29 U.S.C. § 1113 (recognized as a statute of repose in Radford v. Gen., Dynamics Corp., 151 F.3d 396, 400 (5th Cir.1998) (per curiam)). The Securities Exchange Act of 1934 similarly provides that “[n]o action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation.” 15 U.S.C. § 78i(f) (identified as a statute of *733 repose in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 360, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991)).
In contrast, TILA contains no language even hinting that a lawsuit is required to exercise the right of rescission. Neither TILA nor Regulation Z mention at any point the need for a court filing. Sherzer, 707 F.3d at 258. Instead, they simply state that “the obligor has the right to rescind the transaction ... by notifying the creditor, in accordance with the regulations of the [Consumer Financial Protection] Bureau, of his intention to do so,” 15 U.S.C. § 1635(a), and that such notice has to be in written form, 12 C.F.R. § 226.23(a)(2). The fact that Regulation Z “says nothing about filing suit” as part of exercising a right of rescission is somehow understood by the majority as proof that the regulation “does not set forth the entirety of things necessary to accomplish rescission.” Ante at 728. The plain language of the statute and the regulation both unambiguously require only written notice to effectuate rescission. Moreover, courts are bound to interpret any ambiguities in TILA “broadly in favor of consumers.” Rand Corp., 559 F.3d at 845.
The proposition that the right of rescission can only be accomplished through a lawsuit is also inconsistent with the way the subject is treated in the statute itself. Section 1635(a) grants consumers an unconditional “right to rescind” their transaction “until midnight of the third business day” following the completion of the transaction or delivery of the required forms. As Sherzer observed, this is structurally identical to the statute of repose in § 1635(f) which we are currently considering. 707 F.3d at 264. TILA has not required that an obligor file a lawsuit within three days to exercise his right of rescission, and for good reason. During those three days the obligor would still likely lack the grounds for filing because § 1635(b) gives the lender twenty days to terminate his security interest. It is clear in TILA that the right to unconditional rescission is exercised by providing written notice within the three day statute of repose. There is no textual reason to conclude that the three year rescission right must be exercised by other means. See Sherzer, 707 F.3d at 264.
In addition to the unconditional three day rescission right, § 1635 consistently treats rescission as resulting from an act of the obligor, rather than from an act by a court. Section 1635(a) could hardly be clearer in this respect since it gives the obligor “the right to rescind the transaction ... by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so.” Section 1635(b) likewise details the effect of such an obligor “exercising] his right to rescind,” which accordingly obligates the lender to terminate the security interest created by the transaction within “20 days after receipt of a notice of rescission.” Termination of the lender’s interest thus depends on his own act or inaction, not receipt of a court summons. In fact there is almost no mention in § 1635 of any action by a court. As the Third Circuit observed in Sherzer, the judicial system is mentioned only twice in § 1635 and neither reference suggests that the act of rescission or notice of it is dependent on court action. 707 F.3d at 260.
TILA provides only that an “obligor’s right of rescission shall expire three years after the date of consummation of the transaction.” 15 U.S.C. § 1635(f). The statute clarifies that the way this right is exercised is “by notifying the creditor of [the obligor’s] intention to do so,” 15 U.S.C. § 1635(a). Regulation Z removes any doubt by making explicit that the re *734 quired act for rescission is written notification to the lender. 12 C.F.R. § 226.23(a)(2). The Supreme Court also gave no indication in Beach that a claimant must exercise his right of rescission by filing a lawsuit, nor can that requirement be inferred from TILA’s status as a statute of repose. See Sherzer, 707 F.3d at 258.
B.
The majority expresses concern that making rescission claims viable on written notice would permit a clouding of title that could persist for more than three years after closing. No party disputes that lenders are free to file a declaratory or quiet title action at any time to establish conclusively whether a homeowner’s exercise of his right of rescission is valid. In other words, the “cloud” on title lasts precisely so long as the lender wishes it to last. Once notified that the homeowner has exercised his right of rescission, the lender may choose to negotiate or it may choose to litigate, but it can never be subject to an indefinitely clouded title without its own tacit consent. See Sherzer, 707 F.3d at 266-67.
Also of concern to the majority is that forcing lenders to initiate a lawsuit if negotiations prove unsuccessful would mean that a rescission notice might “unilaterally impair” their interest in a property, thus “casting a cloud on the property’s title.” Ante at 728. That same concern would also exist under the majority’s rule, however, because the obligor’s initiation of a lawsuit would also “unilaterally” create a cloud on the title that would not be resolved until a court order or a negotiated settlement. See 15 U.S.C. § 1635(b) (obligating the lender to “take any action necessary or appropriate to reflect the termination of any security interest created under the transaction” within 20 days after receiving notice of rescission).
The First Circuit has pointed out that the congressional goal in TILA was to make “the rescission process a private one, worked out between creditor and debtor without the intervention of the courts.” Belini v. Wash. Mut. Bank, FA, 412 F.3d 17, 25 (1st Cir.2005). The proposition that “filing suit will certainly be necessary to actually accomplish rescission in most cases,” ante at 728, has no basis in the statute. A litigation centered interpretation of TILA is inconsistent with the statute’s three day unconditional right of the obligor to rescind and the textual treatment of rescission throughout § 1635. TILA’s legislative history also confirms that rescission should ideally be a private matter worked out between the parties. In expanding the time period within which the creditor must refund the consumer’s money “after a consumer exercises his right to rescind,” Congress noted that creditors need sufficient opportunity to determine for themselves “whether the right of rescission is available to the consumer and whether it was properly exercised.” S. Rep. 96-368, 96th Cong., 1st Sess. 1979; 1980 U.S.C.C.A.N. 236, 264. By placing the initial investigative obligation on the lender, Congress evinced a clear intent that an ideal rescission would occur without judicial intervention.
No doubt borrowers may sometimes make rescission claims without any valid basis, see ante at 728, but lenders may also deny them without legal right or might take advantage of uninformed consumers, see, e.g., McOmie-Gray v. Bank of America Home Loans, 667 F.3d 1325, 1329-30 (9th Cir.2012) (bank claimed it could and would “toll” the rescission period during negotiations, then used the statute of repose to extinguish the claim once three years had passed from closing the loan). *735 The majority expresses much concern about the former issue and very little about the latter, yet TILA’s status as “remedial legislation, to be construed broadly in favor of consumers,” Rand Corp., 559 F.3d at 845, dictates which problem takes precedence. It was well within Congress’ discretion to decide in TILA that consumers needed special protection.
II.
The appellants request monetary damages due to the lenders’ failure to rescind. See 15 U.S.C. § 1640(a). I agree with the majority that §§ 1641(a) and 1641(e) limit the liability of assignees if the alleged defects in the disclosure statements are not apparent on the face of the documents, and that § 1641(c) only restores a consumer’s right to rescind under § 1635 “against any assignee of the obligation.” These statutory limitations further emphasize the error in the majority’s assumption that rescission under § 1635 requires a lawsuit rather than notice.
The majority describes the “point” of § 1641 as providing “some measure of protection to assignee banks, whose representatives were not present at closing.” Ante at 730 (citing Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 694 (7th Cir.1998)). That is undoubtedly a relevant interest protected by the statute. But the protection of lenders was not the only interest Congress had in mind when drafting TILA. Congress also made clear that consumers were meant to retain an “effective” right of rescission against assignees. S. Rep. 96-368, 96th Cong., 1st Sess. 1979; 1980 U.S.C.C.A.N. 236, 268. A proper reading of TILA should both provide protection to assignee banks while simultaneously ensuring that consumers retain an effective right of rescission.
Two incentives exist under TILA for assignee lenders to do what § 1635(b) requires; that is, to terminate the security interest within 20 days of being informed of an obligor’s notice of rescission. The first reason a lender might terminate its interest is the prospect of an award of monetary damages if it does not. Even if damages are not available, however, the assignee lender still would have an incentive to clear expeditiously the cloud on title created by the obligor’s rescission claim. If TILA requires only that a homeowner provide notice of rescission in order to satisfy the statute of repose, such a cloud would persist until either the parties reach an agreement or one party obtains a court decision resolving the conflict. The lender therefore has a strong incentive to resolve the rescission claim as quickly as possible, and no reason to delay acceding to a valid rescission notice.
Unfortunately, the majority’s interpretation of TILA would have the effect of eliminating both the risk of monetary damages and the need to clear title proactively. The assignee’s best course of action might always be to deny the rescission claim and wait. The worst case scenario for the lender then would be if the homeowner were to file a successful lawsuit and it were forced to rescind. But the lender would still not likely be in a less favorable position than if it had rescinded the transaction at the time of the original rescission notice. The best case scenario from a lender’s vantage point would be when a homeowner does not bring a timely suit, whether because of negligence, lack of funds or awareness of his legal obligations, or possible misleading assurances by the lender that it is tolling the rescission period during negotiations. The rescission claim would then expire and the assignee be left in the clear even after rejecting a claim it knew to be valid.
If the right of rescission is exercised only by providing § 1635 notice, assignee *736 banks can be protected and an effective right of rescission maintained. Assignees are shielded from monetary damages when the flaws in the disclosure notices are not facially apparent, and the obligor’s effective rescission right is protected by the assignee’s incentive to clear the cloud on its title expeditiously. Under the majority’s reading, TILA would become a broad shield for lenders in spite of Congress’ manifest goal of ensuring that consumers receive an effective rescission right against both original and assignee lenders.
III.
The plain language of TILA, its implementing regulations, and its supporting policy rationales all support reading § 1635 to mean what it says: that rescission is exercised when a consumer provides written notice to the lender. The Supreme Court’s decision in Beach is not to the contrary, because it did not address how a consumer rescinds a loan. These cases should be reversed and remanded. For the reasons stated, I respectfully dissent.