# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2974

_____

Vincent Ofor,

        Plaintiff - Appellant,

    v.

Ocwen Loan Servicing, LLC; Aames
Funding corporation, d/b/a Aames
Home Loan,

        Defendants,

U.S. Bank, N.A., as Trustee for the
Registered Holders of MASTR Asset
Backed Securities Trust.

        Defendant - Appellee.

Appeal from the United States
District Court for the
District of Minnesota.

_____

Submitted: March 17, 2011
Filed: August 12, 2011

_____

Before SMITH, BRIGHT, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Vincent Ofor filed suit against, *inter alia*, U.S. Bank, N.A. ("U.S. Bank")
seeking to invalidate the foreclosure and sale of his home. Ofor alleged that (1) the
mortgage that the lender relied upon in foreclosing on his home was defective and

therefore could not provide a valid basis for foreclosure under Minnesota law and (2) the lender violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.*, by failing to provide required notice to Ofor of his ability to cancel the transaction and by refusing to cancel the mortgage when Ofor exercised his right to rescind the mortgage on those grounds. Following a bench trial, the district court[1] dismissed Ofor's claims with prejudice. Ofor now appeals that dismissal, and we affirm.

## I. *Background*

In 2005, Ofor decided to refinance the two existing mortgages on his home in New Brighton, Minnesota. He met with Ken Lindsay, a mortgage broker with Mortgage One, to discuss refinancing options.[2] At that time, Ofor and his then-wife, Lisa Ofor, owed more than $218,000 on the original two mortgages on their home. They planned to pay off consumer loans, student loans, and miscellaneous judgments with the proceeds of the refinanced mortgage; these expenses amounted to more than $24,000. Additionally, they wanted cash back from the transaction, which they ultimately received in the amount of $18,643.04.

After meeting with Lindsay, Ofor attempted to obtain traditional financing from various lenders, but he could not qualify because of his poor credit and the low appraisal value of his home. He then hired Lindsay to obtain refinancing, which Lindsay did through Aames Funding Corporation, d/b/a/ Aames Home Loan ("Aames"). The refinancing transaction involved two different loans—a first mortgage for $220,000 and a second mortgage for $55,000. The $55,000 loan was a balloon loan, requiring minimal monthly payments for the first 15 years and a single balloon

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

[2]"Mortgage One is no longer a viable entity and is not a party to this lawsuit, and Mr. Lindsay has apparently left Minnesota and did not testify either by deposition or at trial." *Ofor v. Ocwen Loan Servicing, LLC*, Civil No. 09-1402 (PAM-JJG), 2010 WL 2133013, at *1 (D. Minn. May 27, 2010).

payment of more than $47,000 in 2020. The monthly payment for the two loans was $2,200 per month.

The closing was scheduled for October 24, 2005. But Ofor left Minnesota in early October 2005 to take a temporary job in New York. To facilitate the closing in his absence, Ofor agreed to give his wife a power of attorney to act on his behalf and sign any documents necessary for closing. Ofor testified that he intended for his wife to sign all necessary closing documents on his behalf, did not expect her to read or check those documents in any way, and understood the powers that he was granting his wife through the power of attorney.

Before leaving for New York, Ofor signed a power of attorney on September 26, 2005, granting his wife the power to act on his behalf and sign the required closing documents, including the mortgages. Although he did not recall signing the September 26, 2005 power of attorney before a notary, he agreed that the signatures on the document were his. He also agreed that Lindsay had received this power of attorney in October 2005. Michael Nordman, a notary, confirmed that his stamp and signature appeared on the September 26, 2005 power of attorney. According to Nordman, his stamp and signature on the power of attorney indicated that Ofor appeared before him on September 26, 2005, and signed the power of attorney.

The closing occurred at the Ofor residence on October 24, 2005. Ofor's wife testified that Ofor participated in the entire closing by speakerphone and that Lindsay explained the terms of the loans and mortgages to Ofor, including that two mortgages were involved instead of one. Ofor denied attending the closing via speakerphone, contending that he was at work during the time the closing took place.

According to Ofor's wife, during the closing, Lindsay could not find the September 26, 2005 power of attorney, so he faxed a second power of attorney to Ofor

in New York. Ofor signed the power of attorney and faxed it back to Lindsay in Minnesota, where it was notarized and entered into the closing file.

As agreed, the lender paid Ofor's debts and obligations with the loan proceeds from the October 24, 2005 refinancing and paid Ofor $18,643.04 in cash, which his wife deposited into his bank account.

On November 7, 2005, the mortgages and deed were recorded with the Ramsey County Recorder's Office, along with the October 24, 2005 power of attorney. In late November 2005, Aames sent a package via Federal Express to the Ofor home that contained a "Notice of Right to Cancel" informing the Ofors that they had until midnight on December 7, 2005, to cancel the loan transaction. The package also contained a copy of Ofor's "Truth-in-Lending Statement Disclosure." When Ofor returned from New York in December 2005, he "glanced at some of the documents" but did not "look at them all" because he "had previously gotten a mortgage" and, as a result, "felt no compunction at all to read any of these documents."

Without objection to the mortgage's validity, Ofor made monthly payments on the two mortgages until September 2006. He has made no mortgage payment since that time yet continued to live in the home. According to Ofor, the refinanced loans did not comport with his understanding of the transaction, as he believed that, instead of two loans, there would be a single loan of $260,000. Ofor claims that he did not notice the discrepancy between his understanding of the refinancing transaction and the actual transaction until several months after closing.

The mortgages were later sold and assigned to U.S. Bank, and the assignment was recorded with the Ramsey County Recorder's Office on September 28, 2007. On June 4, 2008, Ofor, through counsel, sent a rescission letter to U.S. Bank, Aames, and Ocwen Financial Corporation ("Ocwen"), the loan servicer. Ofor contended that he did not receive the required disclosures under TILA. In July 2008, Ocwen denied Ofor's rescission claim.

In October 2008, U.S. Bank proceeded to foreclose the mortgages by advertisement pursuant to Minnesota Statute § 580.02. On December 10, 2008, Ofor filed the instant complaint in state court alleging that (1) the mortgage that the lender relied upon in foreclosing on his home was defective and therefore could not provide a valid basis for foreclosure under Minnesota law, and (2) the lender violated the TILA by failing to provide required notice to Ofor about his ability to cancel the transaction and by refusing to cancel the mortgage when Ofor exercised his right to rescind the mortgage on those grounds. Ofor also filed a notice of lis pendens. Ofor did not ask the state court for emergency relief to enjoin the sale, and the sheriff's sale occurred on December 11, 2008. U.S. Bank purchased the home at the sale. Ofor did not exercise his statutory right to redeem after the sheriff's sale; that right expired in June 2009. *See* Minn. Stat. § 580.001 *et seq.*

Following removal to federal court, the district court held a bench trial and ultimately dismissed with prejudice Ofor's claims against U.S. Bank in their entirety.[3] Ofor moved for a new trial or an amended verdict. The district court denied all post-trial relief.

## II. *Discussion*

On appeal, Ofor argues that the district court erroneously dismissed his claims that (1) U.S. Bank's foreclosure of the mortgages by advertisement was invalid and (2) the lender violated the TILA by failing to provide required disclosures to him.

### A. *Foreclosure by Advertisement*

Ofor asserts that U.S. Bank's foreclosure of the mortgages by advertisement was invalid. According to Ofor, under Minnesota law, the mortgage must be "recorded."

---

[3]Because the district court dismissed the lawsuit, it also discharged the notice of lis pendens recorded with the Ramsey County Recorder's Office.

Minn. Stat. § 580.02. In turn, Minnesota law requires that any instrument affecting real estate that is to be recorded "must contain the original signatures of the parties who execute it and of the notary public or other officer taking an acknowledgment." Minn. Stat. § 507.24, subdiv. 2(a). Ofor asserts that to legally record the October 24, 2005 power of attorney[4]—which was required to validate the mortgage at issue—two separate signature pages would have to be part of the filing: (1) the signature page with the original signatures of Ofor's wife and Michael Speer, the notary, obtained in Minnesota and (2) the signature page faxed to Ofor and signed by him in New York on the same day. Ofor notes that the power of attorney filed with the Ramsey County Recorder's Office contained only *one* signature page and thus cannot contain the "original" signatures of the parties and the notary; furthermore, he points out that the signatures of Ofor and Speer are on the same page even though Speer was not in New York with Ofor that day. Because the power of attorney does not satisfy Minnesota law, Ofor concludes that the mortgages were not properly recorded and U.S. Bank was not entitled to foreclose on Ofor's home.

Additionally, Ofor argues that the October 24, 2005 power of attorney is invalid because it was a "short form" power of attorney requiring a notary's acknowledgment that Ofor signed the power of attorney in the notary's presence; he points out that Speer, the notary, was in Minnesota when Ofor signed the power of attorney. *See* Minn. Stat. § 523.23.

"We review the findings of fact made by the district court in a bench trial only for clear error, but review the district court's interpretation of state law de novo." *Falcon Steel, Inc. v. J. Russell Flowers, Inc.*, 635 F.3d 369, 373 (8th Cir. 2011) (internal citations omitted).

---

[4]The district court never determined the validity of the September 26, 2005 power of attorney; therefore, we will only analyze the validity of the October 24, 2005 power of attorney.

"To entitle any party to make [a] foreclosure [by advertisement], it is requisite . . . that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded . . . ." Minn. Stat. § 580.02(3). "Foreclosure by advertisement was developed as a non-judicial form of foreclosure designed to avoid the delay and expense of judicial proceedings." *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W. 2d 487, 494 (Minn. 2009) (quotation and citation omitted). The foreclosure-by-advertisement statute is "strictly construed" because it "is a purely statutory creation." *Id.* A foreclosing party must "show exact compliance with the terms of the statutes. If the foreclosing party fails to strictly comply with the statutory requirements, the foreclosure proceeding is void." *Id.* (quotation and internal citation omitted). "[T]he 'manifest purpose' of the foreclosure by advertisement statute's recording requirement is 'to make the contents of the mortgage, and, as far as the statute goes, to make the *title to the mortgage* [a] matter of record.'" *Id.* at 497 (quoting *Morrison v. Mendenhall*, 18 Minn. 212 (Gil. 212, 219) (1872)) (emphasis and alteration added in *Jackson*).

To "properly foreclose under [§ 580.02], there must be of record a valid mortgage." *Backus v. Burke*, 51 N.W. 284, 286 (Minn. 1892). Here, Ofor contends that for the mortgage to be validly recorded under § 580.02(3), it must contain the original signatures of all parties executing the document. *See* Minn. Stat. § 507.24, subdiv. 2(a) ("Unless otherwise provided by law, an instrument affecting real estate that is to be recorded as provided in this section or other applicable law must contain the original signatures of the parties who execute it and of the notary public or other officer taking an acknowledgment."). Essentially, Ofor is arguing that because the power of attorney was not properly recorded, the requirements of foreclosure by advertisement were not satisfied.

"A husband or wife may appoint the other as an attorney-in-fact for property transactions." *Bengston v. Dzandzara*, No. A05-531, 2006 WL 538951, at *1 (Minn. Ct. App. Mar. 7, 2006) (unpublished opinion) (citing Minn. Stat. § 519.06). "A

conveyance of the homestead requires signatures of both spouses, and '[a] spouse's signature may be made by the spouse's duly appointed attorney-in-fact.'" *Id*. (quoting Minn. Stat. § 507.02) (alteration added in *Bengston*). Under Minnesota Statutes § 523.01, "'[t]he power of attorney is validly executed when it is dated and signed by the principal.'" *Id*. (quoting Minn. Stat. § 523.01). The power of attorney "is presumed valid if it 'is dated and purports to be signed by the principal named in it.'" *Id*. (quoting Minn. Stat. § 523.04). Only those parties possessing "'actual knowledge that the power was not validly executed'" may *not* rely on the presumptive validity of the power of attorney. *Id*. (quoting Minn. Stat. § 523.04).

In *Bengston*, a husband and wife argued that a lease-back arrangement conveying their homestead was void as a matter of law because the husband fraudulently obtained his wife's signature on the power-of-attorney form. *Id*. The husband claimed that he sold the property without his wife's knowledge "by signing the documents as her attorney-in-fact." *Id*. The husband and wife argued that "a conveyance is void if both parties do not sign the documents of conveyance or if one party signs under false pretenses." *Id*. at *2. The Minnesota Court of Appeals rejected this argument because the power of attorney was presumptively valid, as it bore the wife's signature and the date. *Id*. Furthermore, no evidence existed that the defendant had "actual knowledge that [the husband] obtained his wife's signature by lying to her." *Id*. According to the court, Minnesota law protects "good-faith purchasers who rely on a presumptively valid power of attorney." *Id*. (citing Minn. Stat. §§ 519.06 and 523.04).

The court also determined that "the proposition that a conveyance is void if both parties do not sign the documents of conveyance or if one party signs under false pretenses" did not apply "because a power of attorney is not a conveyance." *Id*. (citing Minn. Stat. § 507.01 ("The word 'conveyance,' . . . includes every instrument in writing whereby any interest in real estate is created, aliened, mortgaged, or assigned

or by which the title thereto may be affected in law or in equity, *except . . .* powers of attorney.") (emphasis added in *Bengston*)).

Ofor attempts to distinguish *Bengston* by arguing that Minnesota Statute § 523.23—as opposed to § 523.01—applies to the present case. According to Ofor, the power of attorney that he signed is a short form power of attorney requiring a proper acknowledgment. Because Speer, the notary, was in Minnesota when Ofor signed the power of attorney, Ofor contends there is no proper acknowledgment and, therefore, the power of attorney is invalid.

The district court never addressed § 523.23 because, as Ofor concedes, he never cited this provision to the district court at trial. Nor did Ofor cite to § 523.23 in his motion for new trial or amended verdict. "It is old and well-settled law that issues not raised in the trial court cannot be considered by this court as a basis for reversal." *Campbell v. Davol, Inc.*, 620 F.3d 887, 891 (8th Cir. 2010) (quotation and citation omitted). We therefore decline to reach Ofor's § 523.23 argument.

## B. *TILA*

At trial, Ofor asserted that the lender violated the TILA by failing to provide required disclosures to him and refusing to cancel the mortgage after he sent a notice of rescission. *See* 15 U.S.C. §§ 1635 and 1638. He presented two legal theories in support of his claims: (1) he did not receive a Notice of Right to Cancel, as it was only given to his wife at closing, and (2) he did not receive the second Notice of Right to Cancel that the lender sent to his home on November 30, 2005, which was addressed to him but not his wife.

We apply "an objective standard of review" to allegations that a creditor violated TILA. *Rand Corp. v. Yer Song Moua*, 559 F.3d 842, 845 (8th Cir. 2009) (quotation and citation omitted).

-9-

Under TILA, if a loan is secured by a debtor's primary residence, "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms . . . whichever is later." 15 U.S.C. [§] 1635(a). Further, "[t]he creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section." *Id.* Notice must be provided "on a separate document that identifies the transaction and . . . clearly and conspicuously discloses" the debtor's rights. 12 C.F.R. § 226.23(b)(1). A creditor's failure to comply with these provisions extends the debtor's right to rescind for up to three years following the transaction. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3).

*Id*. at 846.

As to the first Notice of Right to Cancel, Ofor concedes in his brief that "[i]f the power of attorney is valid . . . then [Ofor's wife] would be authorized to receive the Notice of Right to Cancel on behalf of Vincent Ofor." We have already concluded that the October 25, 2005 power of attorney is valid, *see* Part II.A., *supra*, and there is no dispute that Ofor's wife, acting pursuant to this valid power, signed an acknowledgment at closing that she received the required disclosures on Ofor's behalf. The signing of this acknowledgment establishes delivery of the required disclosures under TILA. 15 U.S.C. § 1641(b) ("[W]ritten acknowledgement of receipt by a person to whom a statement is required to be given . . . shall be conclusive proof of the delivery thereof and . . . of compliance with this part."). "No right to rescind existed here because [Ofor, through his wife acting as attorney-in-fact,] received a timely notice of right to cancel, as evidenced by [Ofor's wife's] signature[ ] on the document." *Henderson v. GMAC Mortg. Corp.*, 347 F. App'x 299, 302 (9th Cir. 2009) (unpublished memorandum) (citing 15 U.S.C. § 1641(b)).

Ofor's second claim is that the lender violated TILA by mailing the second Notice of Right to Cancel only to "Vincent Ofor" and not his wife. Ofor asserts that the second notice was required under TILA because the terms of the transaction changed from those presented at the October 24, 2005 closing as a result of an audit of the loan filed by the lender. According to Ofor, the lender's failure to provide his wife with the second notice constitutes a violation of TILA. Additionally, he argues that he rebutted the presumption that the second notice was delivered to him, as he testified that he did not receive the second notice until weeks after the three days for rescission had expired. He also cites his wife's testimony that she did not open the mailing that was addressed only to him. Because of this purported TILA violation, he maintains that he properly exercised his right to cancel within three years of the transaction.

Ofor cites to no evidence or legal authority that the second Notice of Right to Cancel was *required* under TILA. And, as previously explained, Ofor's wife, who was present during the closing and acting as Ofor's attorney-in-fact, received the first notice on Ofor's behalf.

Furthermore, Ofor has no standing to challenge the lender's failure to send the second notice to his former wife. *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008) ("As a general rule, a plaintiff may only assert his own injury in fact and cannot rest his claim to relief on the legal rights or interests of third parties." (quotation and citation omitted)). Nor has Ofor argued or shown that he falls within the narrow exception for third-party standing. *Id*. ("Third-party standing is an exception to the general rule that a plaintiff may only assert his own injury in fact and permits a litigant who lacks a legal claim to assert the rights of a third party.").

Finally, Ofor has not overcome the "rebuttable presumption of *delivery*" of the required notice to him. 15 U.S.C. § 1635(c) (emphasis added); *Taylor v. Domestic Remodeling, Inc.*, 97 F.3d 96, 98 (5th Cir. 1996) ("If the creditor fails to deliver the

forms, or fails to provide the required information, then the consumer's right of rescission extends for three years after the date of consummation of the transaction."). Ofor concedes that the lender sent a package via Federal Express to the Ofor home—addressed to Vincent Ofor—that contained the second Notice of Right to Cancel, informing him that he had until midnight on December 7, 2005, to cancel the loan transaction. Ofor's wife received this package. This concession establishes that the lender fulfilled any purported obligation to deliver the second notice to Ofor. Ofor's own delay in reviewing the documents contained in the package does not somehow confer liability on the lender or U.S. Bank. As the district court noted in its memorandum and order denying Ofor's motion for a new trial or amended verdict, TILA

> does not require . . . that the lender ensure that the borrower opens his or her mail. The undisputed evidence is that the disclosures were mailed to Plaintiff and that Plaintiff's wife received them. Whether she opened them and read them is Plaintiff's responsibility, not the lender's.

Therefore, Ofor's TILA claims fail.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____