# United States Court of Appeals

### For the Eighth Circuit

_____

No. 11-3878

_____

Alan G. Keiran and Mary Jane Keiran

*Plaintiffs - Appellants*

v.

Home Capital, Inc., a Georgia Corp.;
BAC Home Loans Servicing, L.P.;
Bank of New York Mellon, as Trustee
for the Holders of CWABS, Inc.,
Asset-Backed Certificates, Series
2007-6; and John and Jane Does 1-10

*Defendants - Appellees*

_____

No. 12-1053

_____

Steven J. Sobieniak, an individual; Victoria McKinney, an individual

*Plaintiffs - Appellants*

v.

BAC Home Loans Servicing, LP, a Texas Limited Partnership, as successor in
interest to Countrywide Home Loans Servicing, LP; Mortgage Electronic
Registration Systems, Inc., a Delaware corporation; John and Jane Does 1-10

*Defendants - Appellees*

------------------------------

Consumer Financial Protection Bureau

*Amicus on Behalf of Appellant*

American Bankers Association; Consumer Bankers Association; Consumer Mortgage Coalition

*Amici on Behalf of Appellee*
_____

Appeals from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: October 16, 2012
Filed: July 12, 2013
_____

Before MURPHY, BEAM, and SHEPHERD, Circuit Judges.
_____

BEAM, Circuit Judge.

These consolidated cases involve claims brought under the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 et seq., related to the plaintiffs' mortgage transactions. Stephen Sobieniak and Victoria McKinney (collectively "Sobieniaks") seek rescission and money damages from BAC Home Loans Servicing (BAC). Alan and Mary Jane Keiran seek the same relief from Bank of New York Mellon (BNYM). We affirm the district court.[1]

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

## I.    BACKGROUND

Due to the similarity of issues, these cases were consolidated for appeal, but we set forth the facts of each separately.  On March 6, 2007, the Sobieniaks contacted Countrywide bank, requesting to essentially refinance their mortgage loan. Countrywide sent Sobieniaks TILA disclosures showing a principal value of $567,000 and an annual percentage rate of 6.021%, leading to total payments of $1,207,446.33. On March 22, 2007, the Sobieniaks executed a promissory note with a principal value of $562,600 and a fixed annual percentage rate of 5.875%, leading to total payments amount of $1,198,077.73.  The note was secured by the Sobieniaks' principal residence, located in Wayzata, Minnesota.  At closing, each of the Sobieniaks acknowledged receiving, as relevant to this action, two copies of the notice of right to cancel (rescind), and one copy of the TILA disclosure statement.

On January 15, 2010, the Sobieniaks sent a notice of rescission to BAC (which merged with Countrywide and became its successor in interest).  On January 29, BAC denied the request to rescind because, in BAC's view, the Sobieniaks had received the correct number of copies of the required notices of right to cancel and TILA disclosures.  On January 14, 2011, the Sobieniaks filed the present action pro se, but later obtained counsel and filed an amended complaint seeking rescission, money damages and a declaration that the mortgage is void, all due to BAC's alleged failure to provide two copies of a TILA disclosure at closing.  The district court granted summary judgment in favor of BAC, finding that the Sobieniaks' claim for money damages for the failure to provide documents at closing was barred by the one-year statute of limitations in 15 U.S.C. § 1640(e); that the Sobieniaks were not entitled to money damages for failure to rescind because the Sobieniaks had not rebutted the presumption that they received all of the required TILA disclosures, and alternatively that the disclosure documents were valid on their face.  The court further held that the Sobieniaks had no right to rescind because they did not file the suit for rescission within the three-year statute of repose contained in 15 U.S.C. § 1635(f).

The facts in the Keiran case are similar. In December 2006, the Keirans and Home Capital, Inc. (HCI) executed a promissory note in the amount of $404,000 in exchange for a mortgage of real property located in Lakeville, Minnesota. The loan was subsequently assigned to, and is currently held by BNYM. At closing, each of the Keirans acknowledged receiving, as relevant to this action, two copies of the notice of right to cancel (rescind), and one copy of the TILA disclosure statement. The Keirans stopped making payments on the note in November 2008. On October 8, 2009, the Keirans sent rescission notices to BNYM and to BAC–which services the Keirans' note for BNYM–alleging that they did not receive sufficient copies of disclosures required by TILA at the December 2006 closing. On January 7, 2010, BAC informed the Keirans that no basis for rescission existed. On October 29, 2010, the Keirans filed the current action seeking rescission of the mortgage loan, money damages and a declaratory judgment voiding BNYM's security interest in the Keirans' mortgage loan. Like the Sobieniaks, they alleged rescission was proper because they were entitled to, and did not receive, more than one copy of the TILA Disclosure Statement at closing. The bank moved for summary judgment, which the district court granted, holding that the claims for money damages for TILA deficiencies at closing were barred by the one-year statute of limitations, that the claim for money damages for the bank's failure to rescind was without merit because there were no evidently deficient TILA notices in the Keirans' paperwork at closing, and that the claim for rescission was barred by the three-year statute of repose.

On appeal, plaintiffs challenge the district court's rulings regarding whether filing suit, or instead simply giving notice to the bank within three years is required to preserve the right of rescission under 15 U.S.C. § 1635(f). Additionally, they challenge the district court's rulings that the banks were entitled to summary judgment on plaintiffs' claims for money damages.

## II.    DISCUSSION

We review the district court's grant of summary judgment de novo, viewing the evidence and inferences in favor of the nonmoving party, and affirming if there is no genuinely material factual dispute and the movant is entitled to judgment as a matter of law.  Davis v. U.S. Bancorp, 383 F.3d 761, 765 (8th Cir. 2004).  A complete failure to prove an essential element of a case renders all other facts immaterial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  15 U.S.C. § 1601(a).  We broadly construe TILA in favor of consumers.  Rand Corp. v. Moua, 559 F.3d 842, 845 (8th Cir. 2009).  In transactions secured by a principal dwelling, TILA gives borrowers an unconditional three-day right to rescind.  15 U.S.C. §§ 1635(a), 1641(c). The three-day rescission period begins upon the consummation of the transaction or the delivery of the required rescission notices and disclosures, whichever occurs last. Id. § 1635(a).  Required disclosures must be made to "each consumer whose ownership interest is or will be subject to the security interest," 12 C.F.R. § 226.23(a), and must include two copies of a notice of the right to rescind (also referred to as the Notice of Right to Cancel), id. § 226.23(b)(1), and a TILA disclosure statement, outlining:

> the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments [and] the due dates or periods of payments scheduled to repay the indebtedness.

15 U.S.C. § 1602(u).

-5-

These disclosures must be made "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). If the creditor fails to make the required disclosures or rescission notices, the borrower may rescind beyond the unconditional three-day period, but that "right of rescission shall expire three years after the date of consummation of the transaction." 15 U.S.C. § 1635(f); see also 12 C.F.R. § 226.23(a)(3). TILA allows for money damages and attorney fees when a creditor violates the statute. 15 U.S.C. §§ 1635(g), 1640(a). A claim for money damages must be brought within one year[2] from the date of the occurrence of the violation. Id. § 1640(e).

## A.    Rescission

The first issue we consider is whether the plaintiffs timely filed this action to enforce their right of rescission, which "shall expire three years after the date" of the consummation of their loan transactions. Id. § 1635(f). Plaintiffs contend that to preserve that right, they needed only to inform the lender, within three years and in writing, of their intent to rescind. The banks argue that the borrower must instead file suit for rescission within three years of closing or the right expires pursuant to the terms of § 1635(f). Our sister circuits are split on this issue.

In Gilbert v. Residential Funding LLC, 678 F.3d 271 (4th Cir. 2012), the Fourth Circuit came to the conclusion that giving the creditor written notice, in any form, was

---

[2]Plaintiffs do not challenge the district court's rulings that their claims for money damages for the banks' failures to deliver documents at closing are barred by § 1640's one-year statute of limitations, as both lawsuits were clearly brought more than one year after the respective loan closings. Their claims for money damages for the banks' failures to rescind are, however, timely. See 15 U.S.C. §§ 1635(b), 1640(e).

enough to satisfy the statute of repose. Id. at 277-78. The Gilbert court relied heavily upon the statute's implementing regulation, known as Regulation Z:

> To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

12 C.F.R. § 226.23(a)(2).

The Gilbert court found that the plain meaning of the statute and the regulation compelled the conclusion that the plaintiffs exercised their right to rescind by signaling their intent to do so in a letter to the bank. 678 F.3d at 277-78. The court noted that "neither 15 U.S.C. § 1635(f) nor Regulation Z says anything about the filing of a lawsuit, and we refuse to graft such a requirement" upon obligors seeking rescission. Id. at 277. A recent decision by the Third Circuit shows it to be in accord with the Fourth Circuit. See Sherzer v. Homestar Mortg. Servs., 707 F.3d 255 (3d Cir. 2013).[3]

On the other hand, the Tenth Circuit in Rosenfield v. HSBC Bank, USA, 681 F.3d 1172 (10th Cir. 2012), found that although TILA must be construed liberally in favor of the consumer, the court could not accept the view that notice without suit was enough, and instead, held that commencement of suit was required. Id. at 1187-88. The court "acknowledge[d]" the Fourth Circuit's opinion in Gilbert, but disagreed with

---

[3]Prior to Sherzer, it looked as though the Third Circuit might be on the other side of this issue. See Williams v. Wells Fargo Home Mortg., Inc., 410 F. App'x 495, 499 (3d Cir. 2011) (unpublished) ("It may be that an obligor may invoke the right to rescission by mere notice. Mere invocation without more, however, will not preserve the right beyond the three-year period.").

the Fourth Circuit's view that the right to rescission can be "exercised" under TILA without the rescission ever being effectuated by a court.  Id. at 1188 n.12.  The Rosenfield court stated,

> [w]e disagree that the filing of a suit *to rescind* is not required in order to exercise the right. We simply cannot square the Fourth Circuit's view with the Supreme Court's strong pronouncement in Beach that the TILA rescission right is extinguished if it is not exercised within the three-year statutory period, *and* the Court's vision of repose and its salutary purposes under TILA.

Id. (citation omitted).  The Ninth Circuit is in accord with this viewpoint.  See, e.g., McOmie–Gray v. Bank of Am. Home Loans, 667 F.3d 1325, 1328 (9th Cir. 2012) ("[U]nder the case law of this court and the Supreme Court, rescission suits must be brought within three years from the consummation of the loan, regardless whether notice of rescission is delivered within that three-year period.").

The Supreme Court decision referred to in Rosenfield is Beach v. Ocwen Federal Bank, 523 U.S. 410 (1998).  In Beach, the Court addressed whether a borrower may assert his right to rescind as an affirmative defense in a collection action brought by the lender more than three years after the consummation of the transaction.  Id. at 411-12.  The borrowers in Beach acknowledged that their right to institute an independent proceeding for rescission under § 1635 lapsed three years after closing on the loan, but they argued that the restriction to three years in § 1635(f) was a statute of limitation governing only the institution of the lawsuit, but had no effect when a borrower claimed the right of rescission as a defense.  The Court rejected that view, and reasoned that Congress intended to foreclose the federal right to rescind provided under TILA, defensively or otherwise, after the three-year period has run.  Id. at 419.

The Rosenfield court relied extensively on Beach in reasoning that §1635(f) governs the "life" of the right to rescind, holding that "the mere invocation of the right to rescission via a written letter, without more, is not enough to preserve a court's ability to effectuate (or recognize) a rescission claim after the three-year period has run." 681 F.3d at 1182. Key to this inquiry in Rosenfield was the general nature of a statute of repose as a bar that "*completely* extinguish[es] the right being claimed *after it lapses*," and "serves as an unyielding and absolute barrier to a cause of action" that is unconcerned with "plaintiff's diligence"; instead, a statute of repose is "concerned with the defendant's peace." Id. at 1182-83 (quotations omitted). Consistent with the purpose and intent of a statute of repose, the court held that "it is the filing of an action in a court . . . that is required to invoke the right limited by the TILA statute of repose; the concept of repose itself . . . fundamentally *limits* the ability to file an action." Id. at 1183.

Another focus of the Rosenfield court was the character of rescission in general. Because rescission is an equitable remedy designed to return parties to the status quo ante, its justification is remedial economy as compared with remedies designed to achieve the compensatory goal of a damages award. Remedial economy is not furthered when rescission is prohibitively difficult or even impossible to enforce. Id. at 1183-84. If a plaintiff must only notify the lender of his or her "intent" to rescind, at some uncertain future date, the plaintiff may or may not take action upon that intent, serving as a cloud on the bank's title if the property proceeded to foreclosure before any action was taken. As the Rosenfield court noted, "when a borrower who has provided notice to a creditor decides later–at some unknown, and perhaps distant, point in the future–to effectuate the rescission right through judicial process, the underlying circumstances in no small number of cases are likely to have changed significantly." Id. at 1185; see also Beach, 523 U.S. at 418-19 (recognizing that § 1635(f) acts to limit the clouding of a property's title).

Given these considerations, we agree with the Tenth Circuit's thorough and well-reasoned opinion in Rosenfield and hold that a plaintiff seeking rescission must file suit, as opposed to merely giving the bank notice, within three years in order to preserve that right pursuant to § 1635(f). The nature of a statute of repose and the remedy of rescission, in addition to the uncertainties as to title that would likely occur if the right is not effectuated by court filing within three years of the underlying transaction, are each compelling reasons for the conclusion that we draw. We are not unmindful of the language of Regulation Z or the interpretation of that regulation–that notice, as opposed to filing suit, is enough to preserve the right–that the Consumer Financial Protection Bureau (CFPB), amicus in this case, has advanced in favor of the plaintiffs. However, we agree with Rosenfield that the text of the statute, as explicated in Beach, establishes that filing suit is required. And furthermore, while Regulation Z sets forth one of the things an obligor must do to rescind the loan–give written notice to the bank–it does not set forth the entirety of things necessary to accomplish rescission. Indeed, Regulation Z says nothing about filing suit, but filing suit will certainly be necessary to actually accomplish rescission in most cases where rescission under TILA is sought. See Rosenfield, 681 F.3d at 1186 n.10 (noting that the Beach Court's vision of repose meant that rescission must be asserted via court filing during the repose period, which was inconsistent with the CFPB's argument that rescission under TILA may be accomplished without judicial process); cf. Tri-State Hotels, Inc. v. FDIC, 79 F.3d 707, 715 (8th Cir. 1996) (describing rescission as a "judicial" remedy (quotation omitted)).

Nor do we agree with the CFPB's argument that the bank, rather than the obligor, should be required to file suit to essentially prevent rescission. This would create a situation wherein rescission is complete, in effect, simply upon notice from the borrower, whether or not the borrower had a valid basis for such remedy. Under this scenario, the bank's security interest would be unilaterally impaired, casting a cloud on the property's title, an approach envisioned and rejected by Beach. 523 U.S. at 418-19. Our interpretation of § 1635(f) creates no dissonance between the

regulation and the statute. The regulation requires notice to the lender of an intent to rescind, and the statute requires that rescission be accomplished within three years or the right expires. Extrapolating from <u>Beach</u>, we hold that to accomplish rescission within the meaning of § 1635(f), the obligor must file a rescission action in court.[4] Neither the Sobieniaks nor the Keirans accomplished rescission in this way within three years of their respective transactions. Accordingly, their right to rescind has expired and the district court correctly entered summary judgment on the rescission claims.

## B. Money Damages

Plaintiffs next challenge the district court's rulings that they are, as a matter of law, not entitled to money damages for the banks' refusal to rescind after the Sobieniaks and Keirans gave written notice of their respective intents to rescind. TILA allows for actual damages and attorney fees when a creditor violates the statute (which presumably includes an alleged violation of the consumer's right to rescind), and such claims must be brought within one year from the date of the occurrence of the violation. 15 U.S.C. §§ 1635(g), 1640(a) & (e).

Even though their claim for actual rescission is not timely based upon the foregoing analysis, the plaintiffs' claims for money damages based upon the banks' failure to rescind is, at the very least, cognizable. The heart of our analysis in the

---

[4]The <u>Rosenfield</u> court expressly did not decide the question of whether rescission under TILA could also be accomplished if the lender, upon receipt of the obligor's notice to rescind, agrees to rescission and purports to cancel the underlying transaction. 681 F.3d at 1183 n.8. <u>Rosenfield</u> did not foreclose the argument that under these circumstances, courts could hold the lender responsible in equity. <u>Id.</u> We agree that nothing in TILA or <u>Beach</u> would seem to foreclose the parties completing the rescission process privately, in the event that the lender agrees to rescission upon notice from the obligor.

preceding section is that § 1635(f)'s status as a statute of repose means that the right was extinguished after three years, not that the right never existed. The failure-to-rescind cause of action accrued when plaintiffs requested rescission and the banks denied the request. As previously noted, <u>ante</u> n.2, this claim is timely. We apply an "objective standard of review" to alleged violations of TILA. <u>Ofor v. Ocwen Loan Servicing, LLC</u>, 649 F.3d 808, 815 (8th Cir. 2011) (quotation omitted), <u>cert. denied</u>, 132 S. Ct. 1747 (2012).

Both sets of plaintiffs sue assignee banks[5]–BAC is the assignee[6] creditor in the Sobieniaks' case and BNYM in the Keirans' case. They allege the banks wrongfully

---

[5]Keirans also sued their loan servicer, BAC. Subject to exceptions not applicable here, loan servicers are not liable for money damages under TILA. <u>See</u> 15 U.S.C. § 1641(f); <u>Gale v. First Franklin Loan Servs.</u>, 701 F.3d 1240, 1245 (9th Cir. 2012). The Keirans also sued the original lending bank, HCI, and all plaintiffs sued several "John and Jane Does" but apparently neither HCI nor any of the "Does" were ever served. Finally, Sobieniaks sued the Mortgage Electronic Registration Systems, Inc. (MERS). MERS is an electronic registration system wherein lenders can transfer interests in promissory notes to each other, while MERS remains the mortgagee of record. <u>Dunbar v. Wells Fargo Bank, N.A.</u>, 709 F.3d 1254, 1256, n.2 (8th Cir. 2013). At all points in this litigation, MERS and the Sobieniaks' assignee bank, BAC, were treated as one assignee bank entity, and we do the same, referring only to BAC or the bank.

[6]The Sobieniaks argued for the first time at oral argument that BAC is not actually an assignee bank, and allege there are issues of fact with regard to whether BAC's successor-by-merger acquisition of Countrywide makes it an assignee bank. However, the Sobieniaks alleged in their complaint that BAC was an assignee bank, and repeated this assertion in the opening brief. We accordingly treat BAC as an assignee bank and will not consider the Sobieniaks' contrary argument on appeal. <u>See</u> <u>Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.</u>, 516 F.3d 695, 701 (8th Cir. 2008) (holding that because a party failed to raise an issue to the district court or in its appeal briefs and because our circuit had not ever addressed the issue, the argument was waived).

refused to rescind, and that they were entitled to rescind their mortgages because they received only one copy of the required TILA disclosure statement.[7]

The banks argue that they are not liable because of their status as assignee banks. Section 1641(a) states in part:

> [A]ny civil action for a violation of . . . [TILA] which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary.

15 U.S.C. § 1641(a).

Plaintiffs argue that § 1641(a) does not apply to violations based on a failure to rescind. However, the statute does not exempt rescission failures from its provisions. Further, the point of the statute is to afford some measure of protection to assignee banks, whose representatives were not present at closing. Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 694 (7th Cir. 1998). The statute "does not impose a duty of additional inquiry on assignees." Id. Instead, assignees are liable "[o]nly [for] violations that a reasonable person can spot on the face of the disclosure statement," id., so that assignee banks need not delve into the details of closings when they decide whether to accept assignment of a financial transaction. A violation is facially apparent when the document "can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or . . . does not use the terms required" by TILA. 15 U.S.C. § 1641(a).

---

[7]As previously noted, plaintiffs also brought a stand-alone claim for money damages for the original lending banks' alleged failures to give them these documents at closing, but those claims are barred by the one-year statute of limitations and not at issue in these appeals.

We agree with the banks that the alleged violation–that each set of plaintiffs were given one, rather than two TILA disclosures–was not facially apparent on the loan documents as set forth in § 1641.  Assignee banks are entitled under § 1641 to rely upon the documents contained in the files they received upon assignment, and if those documents appear complete and accurate on their face, a borrower has no basis for a claim for monetary damages against an assignee bank.  The record discloses that the loan files in both cases have acknowledgments from the Keirans and the Sobieniaks that they received all of the notices they were entitled pursuant to TILA, including that each of the four borrowers received two copies of the notice of right to cancel, and one copy of the TILA disclosure statement.  Those acknowledgments are "'conclusive proof'" that the required TILA disclosures were delivered for purposes of an assignee bank's liability under § 1641.[8]  Ofor, 649 F.3d at 815 (quoting 15 U.S.C. § 1641(b)).  Accordingly, the plaintiffs' claims for money damages for the banks' failure to rescind are without merit.

## III.   CONCLUSION

We affirm the district court.

---

[8]Given the banks' status as assignees, we need not reach the merits of whether the plaintiffs actually were given an inadequate number of TILA disclosures (entitling them to rescission).  And indeed, if we did decide that there was no TILA disclosure violation on the merits, our analysis in the preceding section would be unnecessary because absent a disclosure violation, the right to rescind is not extended for three years and instead ends at the close of the three-day window following consummation of the loan transaction.  See Rand, 559 F.3d at 846 (noting that only when a creditor fails to comply with the notice and disclosure provisions in Regulation Z is the right to rescind extended from three days to three years under 15 U.S.C. § 1635(f)).  In deciding the case pursuant to the special protections for assignees under § 1641, we hold only that any such notice or disclosure defects were not evident on the face of the loan documents transferred to the assignee bank.

MURPHY, Circuit Judge, concurring in part and dissenting in part.

While I agree with the majority that the Truth in Lending Act (TILA) does not permit suits for damages against assignees unless the alleged statutory defects are apparent on the face of the lending documents, I otherwise dissent. The majority decision is contrary to the plain language of TILA, the congressional intent behind it, and the position of the agency responsible for enforcing it. TILA is "remedial legislation to be construed broadly in favor of consumers," Rand Corp. v. Yer Song Moua, 559 F.3d 842, 845 (8th Cir. 2009), yet the majority construes its provisions broadly in favor of lenders. Nowhere in the TILA statute is there any requirement that a consumer must file a lawsuit in order to exercise a right of rescission.

I.

A.

TILA provides consumers an unconditional right to rescind a consumer credit transaction for three days after the parties have consummated the loan. 15 U.S.C. § 1635(a). The time to rescind is extended if the lender has not provided certain required disclosures. In that situation, a consumer's "right of rescission shall expire three years" from the date of closing. Id. § 1635(f). Regardless of the grounds for rescission, TILA provides that "the obligor has the right to rescind the transaction . . . by notifying the creditor, in accordance with the regulations of the [Consumer Financial Protection] Bureau, of his intention to do so." Id. at § 1635(a). Regulation Z, promulgated by the agency charged by Congress with enforcing TILA, has provided that a consumer can "exercise the right to rescind" by "notify[ing] the creditor of the rescission by mail, telegram, or other means of written communication." 12 C.F.R. § 226.23(a)(2). Such notification is the only requirement the statute and Regulation Z impose upon consumers to exercise their right of rescission.

-15-

There is no dispute that the Keirans and the Sobieniaks followed these statutory procedures. Both couples gave written notice to the lending banks that they were exercising their right to rescind, and each sent that notice less than three years after their home purchase was completed. Both couples clearly "exercised" their right in the manner prescribed by TILA and Regulation Z. When a statutory text is clear the "sole function of the courts is to enforce the plain language of the statute." Coop v. Frederickson, 545 F.3d 652, 656 (8th Cir. 2008)

The majority suggests that Beach v. Ocwen Federal Bank, 523 U.S. 410 (1998), compels a different interpretation of the statute. This is a puzzling assertion since in Beach the homeowners had unquestionably not exercised their right of rescission within three years, either by providing the statutory notice or by filing a lawsuit as the majority advocates. The Beach homeowners had in fact done nothing at all until five years after they closed on their construction loan. Id. at 413. At that point the bank began foreclosure proceedings, and the Beaches attempted to use the right of rescission as an affirmative defense. Id. at 414. Their claim was that while § 1635(f) placed a three year time limit on filing a lawsuit, that did not prevent them from using the right of rescission defensively against a foreclosure proceeding. The Supreme Court disagreed. According to the Court, the three year time limit in § 1635(f) is not just a statute of limitation, but also a statute of repose that governs the life of the underlying right. Id. at 417–19. Thus, if a consumer had not exercised his right of rescission within three years, he would not just be precluded from bringing a suit, he would be precluded from exercising his rescission right "defensively or otherwise." Id. at 419.

While Beach made clear that the right of rescission expires if it is not exercised within a three year period, it "does not address how an obligor must exercise his right of rescission within the three year period." Sherzer v. Homestar Mortg. Servs., 707 F.3d 255, 258 (3d Cir. 2013) (emphasis in original). In fact the homeowners in Beach did not attempt to exercise their right of rescission in any form—notice, lawsuit, or otherwise—until five years after the completion of their transaction. Thus, Beach

provides no answer to the question in this case.  "The most that can be gleaned" from Beach "is that, however the right of rescission is to be exercised, it must be done within three years."  Id. at 263.

It also cannot be inferred from the fact that § 1635 is a statute of repose that homeowners must sue to exercise their right of rescission.  A statute of repose extinguishes a statutory right unless some action is taken to exercise that right within a particular time period.  By contrast, a statute of limitation is a procedural bar to recovery that does not affect the validity of the underlying right (which could still be revived, for example, by legislative action or used as an affirmative defense).  See id. at 262; Harding v. K.C. Wall Prods., Inc., 851 P.2d 958, 967–68 (Kan. 1992).  The distinction between a statute of limitations and a statute of repose is not germane to the controversy in the cases before the court.

While in many circumstances a statute of repose sets a limit on the time to file a lawsuit, it does not always do so.  Whether a lawsuit is required depends on how a party may exercise its underlying right.  For example, in Ma v. Merrill Lynch, 597 F.3d 84 (2d Cir. 2010), there was a statute of repose under which a bank customer would have the right to be reimbursed for an unauthorized payment only if the customer objected within a year of receiving notice of the debit.  Id. at 88 (citing N.Y. U.C.C. § 4-A-505).  Likewise, a statute of repose in Balam-Chuc v. Mukasey set a deadline for filing a visa petition.  547 F.3d 1044, 1049 (9th Cir. 2008) (citing Immigration and Nationality Act § 245(i)).  Once a statute of repose has been triggered, a party faces a deadline within which it must act, but there is no requirement that the action be a lawsuit.  The nature of the required action depends on what the statute provides.  TILA unambiguously provides that the right of rescission is exercised "by notifying the creditor, in accordance with the regulations of the [Consumer Financial Protection] Bureau, of his intention to do so." 15 U.S.C. § 1635(a).

Congress may choose to use a statute of repose to make the filing of a lawsuit necessary in order to exercise a statutory right, but when it has chosen to do so, it has done it explicitly. Section 413 of ERISA provides an example of a statute of repose in connection with breaches of fiduciary duties: "No action may be commenced" more than six years after the alleged breach of fiduciary duty occurred. 29 U.S.C. § 1113 (recognized as a statute of repose in Radford v. Gen, Dynamics Corp., 151 F.3d 396, 400 (5th Cir. 1998) (per curiam)). The Securities Exchange Act of 1934 similarly provides that "[n]o action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i(f) (identified as a statute of repose in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 360 (1991)).

In contrast, TILA contains no language even hinting that a lawsuit is required to exercise the right of rescission. Neither TILA nor Regulation Z mention at any point the need for a court filing. Sherzer, 707 F.3d at 258. Instead, they simply state that "the obligor has the right to rescind the transaction . . . by notifying the creditor, in accordance with the regulations of the [Consumer Financial Protection] Bureau, of his intention to do so," 15 U.S.C. § 1635(a), and that such notice has to be in written form, 12 C.F.R. § 226.23(a)(2). The fact that Regulation Z "says nothing about filing suit" as part of exercising a right of rescission is somehow understood by the majority as proof that the regulation "does not set forth the entirety of things necessary to accomplish rescission." Ante at 10. The plain language of the statute and the regulation both unambiguously require only written notice to effectuate rescission. Moreover, courts are bound to interpret any ambiguities in TILA "broadly in favor of consumers." Rand Corp., 559 F.3d at 845.

The proposition that the right of rescission can only be accomplished through a lawsuit is also inconsistent with the way the subject is treated in the statute itself. Section 1635(a) grants consumers an unconditional "right to rescind" their transaction "until midnight of the third business day" following the completion of the transaction

-18-

or delivery of the required forms. As <u>Sherzer</u> observed, this is structurally identical to the statute of repose in § 1635(f) which we are currently considering. 707 F.3d at 264. TILA has not required that an obligor file a lawsuit within three days to exercise his right of rescission, and for good reason. During those three days the obligor would still likely lack the grounds for filing because § 1635(b) gives the lender twenty days to terminate his security interest. It is clear in TILA that the right to unconditional rescission is exercised by providing written notice within the three day statute of repose. There is no textual reason to conclude that the three year rescission right must be exercised by other means. <u>See</u> <u>Sherzer</u>, 707 F.3d at 264.

In addition to the unconditional three day rescission right, § 1635 consistently treats rescission as resulting from an act of the obligor, rather than from an act by a court. Section 1635(a) could hardly be clearer in this respect since it gives the obligor "the right to rescind the transaction . . . by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so." Section 1635(b) likewise details the effect of such an obligor "exercis[ing] his right to rescind," which accordingly obligates the lender to terminate the security interest created by the transaction within "20 days after receipt of a notice of rescission." Termination of the lender's interest thus depends on his own act or inaction, not receipt of a court summons. In fact there is almost no mention in § 1635 of any action by a court. As the Third Circuit observed in <u>Sherzer</u>, the judicial system is mentioned only twice in § 1635 and neither reference suggests that the act of rescission or notice of it is dependent on court action. 707 F.3d at 260.

TILA provides only that an "obligor's right of rescission shall expire three years after the date of consummation of the transaction." 15 U.S.C. § 1635(f). The statute clarifies that the way this right is exercised is "by notifying the creditor of [the obligor's] intention to do so," 15 U.S.C. § 1635(a). Regulation Z removes any doubt by making explicit that the required act for rescission is written notification to the lender. 12 C.F.R. § 226.23(a)(2). The Supreme Court also gave no indication in <u>Beach</u> that a claimant must exercise his right of rescission by filing a lawsuit, nor can

-19-

that requirement be inferred from TILA's status as a statute of repose.  See Sherzer, 707 F.3d at 258.

## B.

The majority expresses concern that making rescission claims viable on written notice would permit a clouding of title that could persist for more than three years after closing.  No party disputes that lenders are free to file a declaratory or quiet title action at any time to establish conclusively whether a homeowner's exercise of his right of rescission is valid.  In other words, the "cloud" on title lasts precisely so long as the lender wishes it to last.  Once notified that the homeowner has exercised his right of rescission, the lender may choose to negotiate or it may choose to litigate, but it can never be subject to an indefinitely clouded title without its own tacit consent.  See Sherzer, 707 F.3d at 266–67.

Also of concern to the majority is that forcing lenders to initiate a lawsuit if negotiations prove unsuccessful would mean that a rescission notice might "unilaterally impair" their interest in a property, thus "casting a cloud on the property's title."  Ante at 10.  That same concern would also exist under the majority's rule, however, because the obligor's initiation of a lawsuit would also "unilaterally" create a cloud on the title that would not be resolved until a court order or a negotiated settlement.  See 15 U.S.C. § 1635(b) (obligating the lender to "take any action necessary or appropriate to reflect the termination of any security interest created under the transaction" within 20 days after receiving notice of rescission).

The First Circuit has pointed out that the congressional goal in TILA was to make "the rescission process a private one, worked out between creditor and debtor without the intervention of the courts."  Belini v. Wash. Mut. Bank, FA, 412 F.3d 17, 25 (1st Cir. 2005).  The proposition that "filing suit will certainly be necessary to actually accomplish rescission in most cases," ante at 10, has no basis in the statute.  A litigation centered interpretation of TILA is inconsistent with the statute's three day

unconditional right of the obligor to rescind and the textual treatment of rescission throughout § 1635. TILA's legislative history also confirms that rescission should ideally be a private matter worked out between the parties. In expanding the time period within which the creditor must refund the consumer's money "after a consumer exercises his right to rescind," Congress noted that creditors need sufficient opportunity to determine for themselves "whether the right of rescission is available to the consumer and whether it was properly exercised." S. Rep. 96-368, 96th Cong., 1st Sess. 1979; 1980 U.S.C.C.A.N. 236, 264. By placing the initial investigative obligation on the lender, Congress evinced a clear intent that an ideal rescission would occur without judicial intervention.

No doubt borrowers may sometimes make rescission claims without any valid basis, see ante at 10, but lenders may also deny them without legal right or might take advantage of uninformed consumers, see, e.g., McOmie-Gray v. Bank of America Home Loans, 667 F.3d 1325, 1329–30 (9th Cir. 2012) (bank claimed it could and would "toll" the rescission period during negotiations, then used the statute of repose to extinguish the claim once three years had passed from closing the loan). The majority expresses much concern about the former issue and very little about the latter, yet TILA's status as "remedial legislation, to be construed broadly in favor of consumers," Rand Corp., 559 F.3d at 845, dictates which problem takes precedence. It was well within Congress' discretion to decide in TILA that consumers needed special protection.

## II.

The appellants request monetary damages due to the lenders' failure to rescind. See 15 U.S.C. § 1640(a). I agree with the majority that §§ 1641(a) and 1641(e) limit the liability of assignees if the alleged defects in the disclosure statements are not apparent on the face of the documents, and that § 1641(c) only restores a consumer's right to rescind under § 1635 "against any assignee of the obligation." These

statutory limitations further emphasize the error in the majority's assumption that rescission under § 1635 requires a lawsuit rather than notice.

The majority describes the "point" of § 1641 as providing "some measure of protection to assignee banks, whose representatives were not present at closing." Ante at 13 (citing Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 694 (7th Cir. 1998)). That is undoubtedly a relevant interest protected by the statute. But the protection of lenders was not the only interest Congress had in mind when drafting TILA. Congress also made clear that consumers were meant to retain an "effective" right of rescission against assignees. S. Rep. 96-368, 96th Cong., 1st Sess. 1979; 1980 U.S.C.C.A.N. 236, 268. A proper reading of TILA should both provide protection to assignee banks while simultaneously ensuring that consumers retain an effective right of rescission.

Two incentives exist under TILA for assignee lenders to do what § 1635(b) requires; that is, to terminate the security interest within 20 days of being informed of an obligor's notice of rescission. The first reason a lender might terminate its interest is the prospect of an award of monetary damages if it does not. Even if damages are not available, however, the assignee lender still would have an incentive to clear expeditiously the cloud on title created by the obligor's rescission claim. If TILA requires only that a homeowner provide notice of rescission in order to satisfy the statute of repose, such a cloud would persist until either the parties reach an agreement or one party obtains a court decision resolving the conflict. The lender therefore has a strong incentive to resolve the rescission claim as quickly as possible, and no reason to delay acceding to a valid rescission notice.

Unfortunately, the majority's interpretation of TILA would have the effect of eliminating both the risk of monetary damages and the need to clear title proactively. The assignee's best course of action might always be to deny the rescission claim and wait. The worst case scenario for the lender then would be if the homeowner were to file a successful lawsuit and it were forced to rescind. But the lender would still not

likely be in a less favorable position than if it had rescinded the transaction at the time of the original rescission notice. The best case scenario from a lender's vantage point would be when a homeowner does not bring a timely suit, whether because of negligence, lack of funds or awareness of his legal obligations, or possible misleading assurances by the lender that it is tolling the rescission period during negotiations. The rescission claim would then expire and the assignee be left in the clear even after rejecting a claim it knew to be valid.

If the right of rescission is exercised only by providing § 1635 notice, assignee banks can be protected and an effective right of rescission maintained. Assignees are shielded from monetary damages when the flaws in the disclosure notices are not facially apparent, and the obligor's effective rescission right is protected by the assignee's incentive to clear the cloud on its title expeditiously. Under the majority's reading, TILA would become a broad shield for lenders in spite of Congress' manifest goal of ensuring that consumers receive an effective rescission right against both original and assignee lenders.

## III.

The plain language of TILA, its implementing regulations, and its supporting policy rationales all support reading § 1635 to mean what it says: that rescission is exercised when a consumer provides written notice to the lender. The Supreme Court's decision in <u>Beach</u> is not to the contrary, because it did not address how a consumer rescinds a loan. These cases should be reversed and remanded. For the reasons stated, I respectfully dissent.

_____